OPINION OF THE COURT
Nicholas A. Clemente, J.
The defendants are accused of criminal possession of a weapon in the third degree in that on March 24,1981 they both possessed a loaded pistol. Possession is based upon the presence of the weapon in defendants’ automobile pursuant to the presumption which attaches by virtue of subdivision 3 of section 265.15 of the Penal Law. Defendants move to suppress the pistol asserting that there was no basis to stop their vehicle and that in any event the gun was illegally seized. The People oppose the motion as to both defendants. Additionally, citing United States v Salvucci (448 US 83), *587 Rakas v Illinois (439 US 128) and People v McCloud (81 AD2d 645), the People contend that the defendant passenger, O’Connor, has no standing to move to suppress because he is not the owner of the automobile in which the weapon was found and hence he neither has a possessory interest nor an expectation of privacy therein.
The first issue to be determined is whether the defendant passenger may participate with his codefendant driver in this motion to suppress tangible property.
In United States v Salvucci (supra), where there was a search of the apartment of a defendant’s mother, the court explicitly overruled the automatic standing rule in Fourth Amendment cases as set forth in Jones v United States (362 US 257).
Prior to Jones (supra), a defendant’s testimony at a pretrial suppression hearing could be used against him at his trial. The court recognized the dilemma in possession cases (in order to suppress illegally seized evidence the defendant would have to confess that he possessed the property, thus forcing a defendant to surrender one constitutional right in order to assert another) and created the automatic standing rule.
With the advent of Simmons v United States (390 US 377) which forbade the use of trial of a defendant’s testimony that had been elicited at a hearing, the reason for the automatic standing rule ceased to exist. Accordingly, the Supreme Court held in United States v Salvucci (supra) that defendants charged with crimes of possession may claim the benefits of the exclusionary rule only if their own Fourth Amendment rights have been violated. The court (p 92) refused “to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched.”
Since the defendant passenger, O’Connor, does not have automatic standing to assert any Fourth Amendment rights, the court must inquire whether he has established any “legitimate expectation of privacy”.
In Rakas v Illinois (supra) a police search of a car revealed a box of rifle shells in the glove compartment and a sawed-off rifle under the front passenger seat. In holding *588 that the passengers in the car were not entitled to challenge the police search, the Supreme Court emphasized that the passengers made no showing that they had had any legitimate expectation of privacy in the glove compartment or area under the seat of the car. The court theorized that there were areas such as the trunk of an automobile in which a passenger qua passenger simply would not normally have a legitimate expectation of privacy. It would seem, therefore, that a passenger may have a legitimate expectation of privacy in some other area of an automobile.
In People v McCloud (supra, p 647), the Appellate Division adopted the Salvucci principle for this department, holding that the defendant therein lacked any legitimate expectation of privacy in a stolen vehicle.
The heart of the'case against O’Connor is that he is presumed, pursuant to statute, to be in possession of a firearm solely because it is in an automobile. Therefore, with vehicular possession not being otherwise illegal, it follows that the defendant O’Connor had a legitimate expectation of privacy so as to entitle him to a suppression hearing.
This conclusion is based on two factors:
1. The fact that the firearm, as will be noted later, was on the front seat of the automobile where O’Connor was sitting and not in plain view until he was ordered from the vehicle (unlike Rakas [supra] which discussed areas of an automobile where a passenger has no expectation of privacy, such as the glove compartment, the trunk, and the area under the seat); and
2. The judgment inherent in the statutory presumption that the automobile, as well as the firearm, are within the possession of such defendant.
Having determined that O’Connor has standing to raise the suppression issue, the next issue I must determine relates to the substance of the motions to suppress.
A defendant, who claims to be aggrieved by an illegal search and seizure, bears the ultimate burden of proving that the search was illegal. The People must always demonstrate that the police conduct was reasonable, however, and bear the burden of going forward to show the legality *589 of the police conduct in the first intance (People v Berrios, 28 NY2d 361, 367; People v Rivera, 48 AD2d 305, 307; People v Pepitone, 48 AD2d 135, 136).
A pretrial suppression hearing commenced on August 5, 1981. Police Officer Merrill Kalman, the sole witness at this hearing testified on behalf of the People.
FINDINGS OF FACT
On March 24, 1981, at approximately 5:30 p.m., Merrill Kalman, while on patrol with Police Officer Herbert Colon, observed a brown Ford station wagon traveling on Kingston Avenue make a right turn onto Lefferts Avenue without signaling. They “pulled” the Ford over. Patrolman Colon approached the driver and asked the defendant Aguirre for his driver’s license, registration, and insurance card. Upon Aguirre’s failure to produce any documentation, Colon asked him to exit the vehicle. Meanwhile, Kalman, with her gun drawn, approached the stopped vehicle from the passenger side. Hearing the driver being ordered from the vehicle and being aware that the driver had no proof to substantiate his privilege to operate his motor vehicle, and, as she testified, sensing a possibility of danger, she requested the defendant passenger, O’Connor, to exit the vehicle also. As he got out of the car she reholstered her gun. Kalman thereupon observed a pistol on the front seat of the automobile. The officers then arrested both defendants. (A subsequent check indicated that the driver was, indeed, the owner of the automobile.)
I note that while observing a weapon on the front seat of the vehicle is not incredible per se, it may yet evolve into an art form to complement its cousin, the “dropsy” case. As long, however, as trial tactics consist of using a hearing primarily to obtain a preview of the People’s evidence, the court has little basis for finding such testimony other than credible.
„ CONCLUSIONS OF LAW
In determining the propriety of a police officer stopping a vehicle, the touchstone is whether there are “specific and articulable facts which, taken together with rational inferences *** warrant [the] intrusion” (People v Ingle, 36 NY2d 413, 420).
*590 Since the officers observed the automobile turn a corner without signaling, they were well within the ambit of their authority in stopping defendants’ car (see People v Sobotker, 43 NY2d 559; People v Erwin, 42 NY2d 1064; cf. People v Harrison, 83 AD2d 965).
It follows that, after having justifiably stopped Aguirre’s car, Colon could properly engage in the incremental intrusion of requesting Aguirre to leave the car when there was a failure to furnish the appropriate vehicular papers (Pennsylvania v Mimms, 434 US 106; People v Marin, 80 AD2d 541).
As to O’Connor, however, the issue presented is closer. It has been held that absent some suspicion directed at a passenger, he may not be ordered out of a vehicle (People v Marin, supra). Officer Kalman, however, under the circumstances herein, had a sufficient basis to order O’Con-nor to leave the vehicle. The evidence shows that Kalman required O’Connor to leave the vehicle only after Colon had ordered Aguirre to do so. This was after learning that Aguirre could not produce any papers to prove ownership or even his right to operate a motor vehicle. It is apparent that at that point Kalman could legitimately be concerned for her safety, since there was a possibility that they had come upon individuals who possessed a stolen car. The inordinate risk confronting an officer as he approaches a person seated in an automobile has been judicially recognized (Pennsylvania v Mimms, supra, p 110). While the Constitution requires that individuals be allowed to live their lives free from governmental interference, it does not require law enforcement officers to disregard common sense and needlessly endanger their lives. Accordingly, Kalman’s command to O’Connor to exit the car was neither an improper intrusion nor restraint sufficient to be characterized as an arrest. It must be noted that the court will not substitute its judgment for that of a police officer in a street confrontation where there is no gross deviation from acceptable conduct. In this regard, it must be reiterated that the order to leave the vehicle, despite the fact that the officer initially had her gun drawn, did not constitute an arrest but rather a limited and proper intrusion.
*591 The vehicle, being properly stopped, and since the defendants were properly asked to exit, it further follows that when the police officer saw the gun on the seat, in plain view, it could legally be seized (see People v Brosnan, 32 NY2d 254; People v Mangan, 55 AD2d 247, 250). Therefore, defendants’ motions to suppress the gun are denied.