OPINION OF THE COURT
Irving Lang, J.
The defendant’s motion to dismiss the instant indictment on double jeopardy grounds raises the issue whether an earlier plea of guilty on a misdemeanor complaint charging the defendant with criminal possession of stolen property and related crimes bars prosecution on a subsequent indictment charging the defendant with burglary, grand larceny and two counts of criminal possession of stolen property, when the offenses charged in the misdemeanor complaint and the indictment are based upon the same criminal transaction.
The defendant claims that this prosecution violates the Fifth Amendment of the United States Constitution, section 6 of article I of the New York State Constitution, and CPL 40.20. Defendant also moves for dismissal on the ground that prosecution of the indictment is barred by CPL 40.40.
*7 Three issues requiring analysis are raised by the defendant’s motion:
(a) The relationship between larceny and the means of committing it, such as burglary.
(b) The interrelationship between larceny and the crime of criminal possession of stolen property.
(c) The problem of prosecuting larceny or possession of stolen property when there has been a former prosecution involving only a portion of the proceeds of the criminal theft.
FACTS
On October 9, 1980, at approximately 11:30 a.m., the defendant, James Fletcher, was arrested on East 40th Street in Manhattan, in possession of a blank prescription pad (bearing the name of Dr. Adam Lewenberg), a hypodermic syringe, 12 tablets of Triavil, and one bottle of procaine. The arresting officer, Police Officer Dilberti of the 9th Precinct, telephoned Dr. Lewenberg at his Bronx office, inquiring whether the doctor had been burglarized. The doctor informed the officer that he was not aware of any burglary at his Manhattan or Bronx office, but that the man arrested was not authorized to take, use, or possess the property. Officer Dilberti charged the defendant with criminal possession of a controlled substance in the seventh degree, criminally possessing a hypodermic needle, and criminal possession of stolen property in the third degree. Fletcher was given a desk appearance ticket, returnable October 24, 1980. A misdemeanor complaint containing these charges was filed with the court.
At about 3:00 p.m., on October 9,1980, when Dr. Lewenberg arrived at his Manhattan office, he discovered that it had indeed been burglarized. The doctor reported the incident and officers from the 17th Precinct burglary unit responded. On this call, Police Officer Martin Gill lifted a latent fingerprint from a cigarette package apparently left by the burglar. The doctor informed the burglary unit officers of the earlier telephone call he had received at his Bronx office, but was unable to recall the name, shield or command of the earlier caller. All attempts of the 17th *8 Precinct burglary unit to ascertain the identification of that first caller proved unsuccessful.[1]
On October 20, 1980, Officer Gill of the burglary unit was informed by the latent fingerprint unit that the lifted print was of sufficient value for comparison purposes. Yet, at this time the officer had no suspects, and therefore no known prints with which to compare the lifted print.
On October 24, 1980, the defendant Fletcher did not appear in court on his desk appearance ticket, and an arrest warrant was issued.
On November 8,1980, Fletcher was arrested in Brooklyn for an unrelated burglary. However, he escaped from the custody of the 94th Precinct the same day. Ten days thereafter, the defendant was arrested by officers from Conrail for trespassing on private property at Grand Central Terminal. At the time of this arrest, on November 18, 1980, Fletcher admitted that he was previously arrested in Brooklyn for burglary and had escaped. Also at this time, the Conrail officers discovered various doctors’ prescription forms, some containing the name of Dr. Lewenberg, in defendant Fletcher’s possession. The Conrail police immediately notified the 94th Precinct, and a Brooklyn detéctive arrived and took custody of Fletcher. The defendant was taken back to Brooklyn and was booked on charges arising out of the incidents of November 8,1980. On the same day (November 18, 1980), the Conrail officers contacted Dr. Lewenberg, and learned of the pending 17th Precinct burglary unit investigation. They then notified the 17th Precinct, and informed the burglary unit of the Conrail officers’ discovery of Dr. Lewenberg’s blank prescription pads in Fletcher’s possession. Based upon this new information Officer Gill immediately ordered a comparison of defendant’s fingerprints with the one which he lifted from Dr. Lewenberg’s Manhattan office (when he responded to the doctor’s report of the burglary on October 9, 1980).
*9 Also on November 18, 1980, the Conrail police were informed that James Fletcher rented a locker in Grand Central Terminal which purportedly contained the proceeds of several burglaries. On November 19, both Conrail police and officers from the 17th Precinct burglary unit witnessed the opening of that locker. Its contents included identification papers of James Fletcher, burglar’s tools, and prescription forms bearing the names of several doctors, including Dr. Lewenberg.
On November 20, 1980, defendant Fletcher was produced in New York Criminal Court, Part AP5, for arraignment on the misdemeanor complaint on which the defendant had failed to appear on October 24, 1980. The defendant pleaded guilty to section 220.03 of the Penal Law (criminal possession of a controlled substance in the seventh degree) covering the entire misdemeanor complaint and was sentenced to 30 days’ imprisonment.
On December 1, 1980, Officer Gill (of the 17th Precinct burglary unit) received the results of the fingerprint comparison test. The report confirmed that the print lifted from Dr. Lewenberg’s Manhattan office on October 9,1980 belonged to James Fletcher. Based upon this evidence, Officer Gill obtained an arrest warrant on December 4, 1980, charging the defendant with burglary in the third degree.[2] On December 5, 1980, Fletcher was arraigned on the warrant. A four-count indictment was filed in the New York State Supreme Court on December 11, 1980, charging the defendant with burglary in the third degree, grand larceny in the second degree (involving property, including personal property and cash, valued in excess of $1,500 stolen from Dr. Lewenberg’s office) and two counts of criminal possession of stolen property in the third degree (the first charges the defendant with possession on November 18, 1980, of prescription forms stolen from Dr. Lewenberg’s office, the second charges Fletcher with possession on November 18, 1980, of prescription forms stolen from *10 another doctor, Dr. Samuel Katz, on November 12 or 13, 1980).
The defendant, by the instant motion, seeks dismissal of the indictment, on the ground that prosecution thereunder, violates his protection against double jeopardy guaranteed by the Fifth Amendment of the United States Constitution, by section 6 of article I of the New York State Constitution, and by CPL 40.20. The defendant further claims that prosecution under the instant indictment is violative of CPL 40.40.[3]
DOUBLE JEOPARDY GUARANTEE
THE CONSTITUTIONAL STANDARD
The double jeopardy clause of the United States and New York State Constitutions prohibits retrial of a criminal defendant who has already been placed in jeopardy for the same offense. (US Const, 5th Arndt; NY Const, art I, § 6.)
The constitutional test generally applied to determine whether two offenses are distinct for double jeopardy purposes was formulated by the United States Supreme Court in Blockburger v United States (284 US 299). The standard is as follows (p 304): “The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” (Emphasis added; see, also, People v Artis, 74 AD2d 644.) This test emphasizes the elements of the two crimes. (Brown v Ohio, 432 US 161.) In addition, the double jeopardy clause generally forbids successive prosecution and cumulative punishment for a greater and lesser included offense. (Brown v Ohio, supra.) The constitutional issue before this court is whether each offense charged in the indictment requires proof of a fact which the offenses charged in the misdemeanor complaint do not, and vice versa.
*11 The first count of the indictment charges the defendant Fletcher with burglary in the third degree. Section 140.20 of the Penal Law defines this offense as follows:
“§ 140.20 Burglary in the third degree
“A person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.”
The misdemeanor complaint charged the defendant with criminal possession of stolen property in the third degree, defined as follows:
“§ 165.40 Criminal possession of stolen property in the third degree
“A person is guilty of criminal posssession of stolen property in the third degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof.”
The misdemeanor complaint further charged the defendant with criminally possessing a hypodermic needle and criminal possession of a controlled substance in the seventh degree (Penal Law, § 220.03). The latter is defined as follows:
“§ 220.30 Criminal possession of a controlled substance in the seventh degree
“A person is guilty of criminal possession of a controlled substance in the seventh degree when he knowingly and unlawfully possesses a controlled substance.”
Examination of the above statutes clearly indicates that prosecution of the burglary count in the indictment requires proof of a fact not required to be proVen under the misdemeanor complaint. That is, the burglary charge calls for the People to establish that the defendant entered or remained unlawfully in Dr. Lewenberg’s office with the intent to commit a crime therein. None of the offenses enumerated in the misdemeanor complaint require that element to be established. Similarly, the charges in the misdemeanor complaint require proof of an element not necessary to establish the burglary. Specifically, the misdemeanor complaint requires proof that the defendant *12 actually possessed property stolen from Dr. Lewenberg’s office, in addition to possessing drugs and a needle. The fact of possession need not be proven under the burglary count in the indictment. Thus, the Blockburger test is satisfied with respect to the burglary charge.[4]
Application of the Blockburger test to the second count of the indictment — grand larceny in the second degree, becomes more complex. Section 155.35 of the Penal Law provides:
“§ 155.35 Grand larceny in the second degree
“A person is guilty of grand larceny in the second degree when he steals property and when the value of the property exceeds one thousand five hundred dollars.”
It may be argued that grand larceny in the second degree requires proof of an element that criminal possession of stolen property in the third degree does not, specifically, prosecution of the larceny mandates proof that the defendant actually stole property and that its value exceeded $1,500. Proof of actual stealing and monetary value are not elements of any of the possessory crimes charged in the misdemeanor complaint.
However, examination of the converse question presents a problem under the Blockburger rationale. The possession offense requires proof that the defendant knowingly possessed stolen property on October 9, 1980 intending to benefit himself or another or impede the owner’s recovery. The grand larceny charge requires a showing that the defendant stole the property sometime between October 8 and 9, 1980. Implicit in the element “stealing” is that the *13 defendant was in criminal possession of the property. Larceny is the actual taking of property with felonious intent and the crime is not complete until such possession is acquired. Therefore “[i]n most instances of larceny the defendant is also guilty of the crime of criminal possession of the property he has stolen” (Hechtman, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, 1981 Pocket Part, Penal Law, § 165.60, p 84). Thus, proof that the defendant criminally possessed stolen property on October 9, 1980, as charged in the misdemeanor complaint, does not require proof of any specific element which is not needed to establish the grand larceny charge of the indictment. As such, the Blockburger test is not satisfied with respect to these offenses.[5]
In addition, the possession charge may be viewed as a lesser included offense of the grand larceny charge. “As is invariably true of a greater and lesser included offense, the lesser offense * * * requires no proof beyond that which is required for conviction of the greater” (Brown v Ohio, 432 US 161,168, supra; cf. People v Lennon, 80 AD2d 672; CPL 1.20, subd 37).[6]
Based upon this analysis, the offenses enumerated in the misdemeanor complaint and the grand larceny charge are apparently the same for double jeopardy purposes and it would seem as if prosecution of the grand larceny charge is constitutionally prohibited.
However, the Supreme Court in Brown v Ohio {supra, p 169, n 7) enumerates an exception to this double jeopardy doctrine, “[W]here the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due dili *14 gence” before the first trial. (Jeffers v United States, 432 US 137.) The issue then is whether at the time of Fletcher’s guilty plea covering the misdemeanor charges the People were unable to obtain facts necessary to sustain the grand larceny charge, despite the exercise of due diligence. To paraphrase Senator Baker of Tennessee in the Watergate hearings: what did the People know and when did they know it? Based upon the chronology of the instant case, it appears that the exception is applicable. When Fletcher was originally arrested on October 9,1980, Officer Dilberti had no basis upon which to charge the defendant with larceny (or burglary) because upon inquiry of Dr. Lewenberg, the officer was not informed that there was a burglary. When the 17th Precinct burglary unit responded upon discovery of the burglary, a latent fingerprint was lifted, and attempts to identify the person who phoned the doctor earlier were unsuccessful. Fletcher pleaded guilty to the misdemeanor on November 20,1980. Two days earlier, on November 18, 1980, the defendant was arrested by Conrail police, and on the following day, burglary unit officers witnessed the opening of Fletcher’s locker, which allegedly contained the proceeds of several burglaries. It was only one day prior to the defendant’s plea that the burglary unit first obtained credible evidence that it was Fletcher who may have stolen the property from Dr. Lewenberg’s office. Upon this discovery, the 17th Precinct officers ordered a comparison of Fletcher’s prints with the latent print lifted on October 9,1980. Prior to this time, the lifted print was of little value, since the police had no suspects in the burglary/larceny and therefore no known prints with which to compare it. Finally, it was not until December 1,1980 that the tests from the latent fingerprint unit confirmed the lifted print to be that of Fletcher. It was only at that time that the People had sufficient evidence to indict the defendant on grand larceny. Clearly, this delay does not evidence any lack of due diligence on the part of the State. Rather, it reflects a complicated chain of events and investigation in a high crime urban community. As such, while grand larceny in the second degree and the possessory crimes charged in the misdemeanor complaint are the “same offense” according to the Blockburger ration *15 ale, the Fifth Amendment double jeopardy clause does not bar prosecution of the larceny count since the additional facts necessary to sustain the greater charge were not discovered prior to the defendant’s plea, despite the exercise of due diligence.
The third count of the indictment charges the defendant with criminal possession of stolen property in the third degree, referring to possession by the defendant on November 18, 1980 of prescription forms stolen from Dr. Lewenberg. Since that possessory offense is identical to that charged in the misdemeanor complaint, the Blockburger test is not satisfied, and the Fifth Amendment double jeopardy clause forbids prosecution under that count of the indictment. It is true that the indictment charge necessitates proof of defendant’s possession of prescription forms on November 18, 1980, whereas the misdemeanor complaint involved the possession of those forms on October 9, 1980. However, for jeopardy purposes, I hold that the possession of the prescriptions is one offense, arising out of the single act of stealing them from Dr. Lewenberg’s office. “The Double Jeopardy clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units.” {Brown v Ohio, 432 US 161, 169, supra.) If the People are permitted to compartmentalize offenses of the same degree in that way, the potential exists for a never ending series of trials for similar crimes of the same degree. (Durrell, Double Jeopardy: Multiple Prosecutions Arising From The Same Transaction, 15 Amer Grim L Rev, 259, 267.) Therefore, prosecution under the third count of the indictment would violate James Fletcher’s Fifth Amendment protection against double jeopardy.
NEW YORK STATUTORY PROTECTION AGAINST
DOUBLE JEOPARDY — GPL 40.20
The analysis thus far has focused upon the protection afforded a criminal defendant under constitutional guarantees against double jeopardy. Another issue before this court is whether the remaining counts of the indictment — burglary in the third degree and grand larceny in the *16 second degree — violate the New York statutory double jeopardy provisions.
The New York Legislature has chosen to expand the constitutional guarantee by its promulgation of CPL 40.20. (Matter of Auer v Smith, 77 AD2d 172.) This section is generally known as the “same transaction” test which precludes a second prosecution based upon the same transaction as a former one. (Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County, 37 NY2d 560; cf. Ashe v Swenson, 397 US 436, 448 [Brennan, J., concurring on “same transaction” grounds].) Specifically, CPL 40.20 (subd 2) states “[a] person may not be separately prosecuted for two offenses based upon the same act or criminal transaction”. Cognizant of the dangers inherent in so broad a rule, the Legislature adopted the version advanced by the Model Penal Code (American Law Institute, Model Penal Code, Proposed Official Draft [1962], § 1.09, subd [1], par [c]; § 1.10) and postulated several exceptions. (CPL 40.20, subd 2, pars [a]-[f].) Here, the first question presented is whether the indictment is based upon the same act or criminal transaction as the misdemeanor complaint. The second question is whether any of the exceptions to the general rule apply.
A criminal transaction is defined in CPL 40.10 (subd 2): “ ‘Criminal transaction’ means conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture.” Criminal transaction is primarily a factual concept denoting a group of acts or an episode of conduct which gives rise to one or more offenses. (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A [1971], CPL 40.10, p 103.) The record indicates that the offenses charged in the misdemeanor complaint (criminal possession of stolen property [prescription pads], criminal possession of a controlled substance, and criminal possession of a hypodermic needle) did arise from the same criminal transaction which resulted in an indictment for burglary *17 and grand larceny. The course of conduct allegedly constituting the offenses — entering Dr. Lewenberg’s office and stealing drugs and personal property — was closely related in criminal purpose so as to constitute a single criminal venture within the meaning of CPL 40.20 (subd [2]).
The issue now arises whether any of the exceptions enumerated in CPL 40.20 (subd 2) applies. There are six exceptions which, if applicable, would permit a prosecution on the burglary and grand larceny charges. The People contend that paragraphs (a) and (b) apply in the instant' case. CPL 40.20 (subd 2, par [a]) provides that a person may be separately prosecuted for two offenses based upon the same criminal transaction if: “(a) The offenses as defined have substantially different elements and the acts establishing the offense are in the main clearly distinguishable from those establishing the other”. This exception “[i]n essence, calls for clear and chronological factual distinction between the acts establishing one offense and those establishing another.” (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A [1971], CPL 40.20, p 107.) CPL 40.20 (subd 2, par [b]) permits separate prosecutions if: “(b) Each of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil”.
With regard to the burglary count in the indictment, this court holds that a separate prosecution may be conducted as to that charge pursuant to either of the above exceptions. CPL 40.20 (subd 2, par [a]) (element) is satisfied because, by definition the burglary count involves proof that James Fletcher knowingly entered or remained unlawfully in Dr. Lewenberg’s office (on October 8 or 9, 1980), with intent to commit a crime therein. These elements are “substantially different” from those which comprise the possessory crimes, which require proof that the defendant knowingly possessed stolen property. Similarly, the acts establishing the burglary offense are clearly distinguishable from those establishing criminal possession, since the former require the act of entering or remaining unlawfully with criminal intent, whereas the latter requires the act of knowingly possessing property stolen from *18 Dr. Lewenberg. Thus, James Fletcher may be tried on the burglary count pursuant to CPL 40.20 (subd 2, par [a]) notwithstanding that it stems from the same act or criminal transaction as the offenses contained in the misdemeanor complaint.
The burglary charge also passes muster under CPL 40.20 (subd 2, par [b]) (evil). The first clause in paragraph (b) embodies the Blockburger test discussed above. Since burglary contains an element (unlawful entering or remaining with criminal intent) which the possessory charges do not, and since the latter contain an element (actual criminal possession) which the burglary count does not, the initial portion of this exception is met. In addition, the statutory provisions defining burglary and the possessory offenses are designed to prevent very different kinds of evil or harm. Whereas the burglary statute is designed to prevent a trespassory type of crime, the criminal possession statutes seeks to prevent the wrongful dealing in, and benefit from property which the holder knows is stolen.[7]
LARCENY — POSSESSION OF STOLEN PROPERTY
Application of the above exceptions to the grand larceny charge of the indictment presents a more difficult issue. Are the elements of larceny and possession separable? Are the two crimes addressed to discrete evils? Under New York’s statute are the crimes fissionable or fusable for jeopardy purposes?
Historically, until the passage of the revised Penal Law, our courts consistently held that the two crimes were separate and distinct. In 1889, the court in People v Brien (53 Hun 496) held that larceny and receiving stolen goods were separate, distinct, and independent offenses, requiring different kinds of proof. In People v Zimmer (174 App Div 470, affd 220 NY 597), the court held that the crime of knowingly receiving stolen property was a complete substantive offense not related to the original larceny. While a *19 person could be indicted for both larceny and receiving stolen property, he could not be convicted of receiving property which he himself had stolen. (People v Daghita, 301 NY 223, mot for rearg den 301 NY 744; see, also, People v Colon, 28 NY2d 1.)
With the advent of the revised Penal Law (L 1965, ch 1030, eff Sept. 1, 1967), however, a statutory and judicial metamorphosis occurred in the treatment of the two crimes. The new Penal Law (§§ 165.40, 165.45, 165.50) changed the name of the crime to simply criminal possession of stolen property. The old Penal Law (§ 1308) was entitled buying, receiving, concealing or withholding stolen or wrongfully acquired property. This was no mere semantic switch. Along with the change in name, subdivision 2 of section 165.60 of the new Penal Law provided that it was no defense to the charge that the defendant stole or participated in the larceny, albeit retaining the prohibition against conviction of both larceny and possession of the same property.
The Penal Law Revision Commission’s staff notes indicate that the shift from receiving, concealing, or withholding to one of possession worked a change in case law, in effect overruling Daghita (supra), which held that a thief could not be convicted of receiving, etc., the property which he stole. “Under the revision, however, there is no inconsistency in convicting a thief of ‘possession’ of the same property; and this proposition is expressly stated.” (Commission staff notes to criminal possession of stolen property.) The statutory fusion of the two crimes was further buttressed by chapter 375 of the Laws of 1976 which amended subdivision 2 of section 165.60 of the Penal Law by deleting the phrase “provided that a person may not be convicted of both larceny and criminal possession of stolen property with respect to the same property”.
Thus, it is no longer necessary for the court or jury to answer Judge Cardozo’s famous conundrum, “Is the guilty possessor the thief, or is he a receiver of stolen goods?” (People v Galbo, 218 NY 283, 290.) The answer is either or both.
Case law quickly adapted to the change in statutes, both as to elements and evils. In People v Crown (51 AD2d 588, *20 589), the Appellate Division, Second Department, held that where a defendant “had previously been convicted, upon his guilty plea, of petit larceny with regard to [a] stolen credit card”, two counts of a subsequent indictment based upon his alleged criminal possession of the card had to be dismissed. (Cf. Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County, 43 AD2d 414, mod 37 NY2d 560, supra, which held that where possession of drugs was among the acts charged and proved in a Federal court indictment charging conspiracy, CPL 40.20 [subd 2] prohibited a subsequent State prosecution on a charge of criminal possession of the same drugs. The case at bar is predicated upon the same principle as Abraham, to the extent that proof of the larceny charge is based upon defendant’s possession of items to which he has already pleaded guilty.)
In People v Lennon (80 AD2d 672, 673, supra), the Appellate Division, Third Department, held that the defendant’s Massachusetts larceny conviction for stealing antique tobacco tins barred prosecution on a New York indictment charging the defendant with criminal possession of the stolen tins since “the acts establishing the larceny were not clearly distinguishable from those establishing the possessory crime”. The court went on to state (supra, p 673), “[w]hile larceny is aimed specifically at the thief and criminal possession of stolen property guards against transfers or 'fencing’, the harms are not 'very different’.” The court also concluded (supra, p 673) that “in New York, criminal possession of stolen property is but a form of larceny”. (See Hechtman, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, 1981 Pocket Part, Penal Law, § 165.60, p 83.)
In sum, the People may prosecute defendant Fletcher on the burglary count of the indictment notwithstanding that it arises from the same criminal transaction as the offenses enumerated in the misdemeanor complaint, since the exceptions of CPL 40.20 (subd 2) apply. However, prosecution of the grand larceny charge is prohibited. Although that count is constitutional under Brown and Jeffers, it fails to fall within either the “element” or “evil” exception to the *21 broader double jeopardy protections afforded by the New York statutory “same transaction” test.
JOINTLY PROSECUTABLE OFFENSES
cpl 40.40
The defendant James Fletcher asserts that prosecution of the instant indictment is also barred by CPL 40.40. This section provides in relevant part:
“§ 40.40 Separate prosecution of jointly prosecutable offenses; when barred
“1. Where two or more offenses are joinable in a single accusatory instrument against a person by reason of being based upon the same criminal transaction, pursuant to paragraph (a) of subdivision two of section 200.20, such person may not, under circumstances prescribed in this section, be separately prosecuted for such offenses even though such separate prosecutions are not otherwise barred by any other section of this article.
“2. When (a) one of two or more joinable offenses of the kind specified in subdivision one is charged in an accusatory instrument, and (b) another is not charged therein, or in any other accusatory instrument filed in the same court, despite possession by the people of evidence legally sufficient to support a conviction of the defendant for such uncharged offense, and (c) either a trial of the existing accusatory instrument is commenced or the action thereon is disposed of by a plea of guilty, any subsequent prosecution for the uncharged offense is thereby barred.”
The rationale underlying this provision is that “[w]here the evidence against a person is in the prosecutor’s hands, he may not — as a player in a game of chance — deal out indictments one at a time.” (Matter of Auer v Smith, 77 AD2d 172, 189, supra.) CPL 40.40 outlaws repeated prosecutions for offenses arising out of a single criminal transaction, even though the offenses are factually severable as not to fall within the purview of the double jeopardy taboo. The provision allows for an equitable remedy in those instances where no valid double jeopardy claim may be maintained but where fairness nevertheless dictates a single, and not separate prosecutions for several offenses. (Denzer, Practice Commentary, McKinney’s Cons Laws of *22 NY, Book 11A [1971], CPL 40.40, p 142). In essence CPL 40.40 prevents vexatious multiple prosecutions and promotes the interests of justice, economy and convenience by consolidating in one lawsuit all issues arising out of a single transaction or occurrence (People v Ruzas, 54 AD2d 1083).
Since both the criminal possession count and the grand larceny charge of the indictment are precluded by the constitutional and statutory double jeopardy bar, the only remaining issue before this court is whether the People may proceed under the burglary count within the constraints of CPL 40.40.
The possessory offenses, to which defendant Fletcher pleaded guilty, and the charge of third degree burglary were joinable under CPL 40.40 (subd 1); the defendant’s guilty plea does not bar prosecution for the burglary because of an exception to the joinder doctrine provided in CPL 40.40 (subd 2). That exception permits a subsequent prosecution of the uncharged offense if, at the time of disposition (by plea or trial) under the first accusatory instrument, the People did not possess evidence legally sufficient to support a conviction of the uncharged offense. As previously discussed, the record supports the District Attorney’s contention. The People’s proceeding with the burglary charge is clearly not the product of harassment or overzealous prosecution. It is simply the culmination of a diligent investigatory process where evidence essential to prove the more serious charge was only adduced subsequent to the defendant’s plea of guilty on the misdemeanor complaint. Therefore, in the instant case, neither the letter nor intent of CPL 40.40 is contravened by prosecution of defendant Fletcher under the burglary count of the indictment.
CONCLUSION
There is no constitutional or statutory bar to prosecuting a burglary where the defendant has previously pleaded guilty to possession of some of the fruits of the burglary, provided that the prosecution, exercising due diligence did not have sufficient evidence to pursue the burglary. The elements of the crimes are different and the crimes are designed to prohibit distinct and different evils.
*23 Both under the Constitution and New York statutes a person convicted of possession of stolen property cannot be tried for possession of additional stolen property from the original theft if the second crime is of the same degree as the first crime.
If the new charge, whether larceny or possession of stolen property is of a higher degree than the original charge to which the defendant pleaded guilty and the prosecution with due diligence could not have proceeded initially on the more serious charge, there is no constitutional jeopardy claims which would bar defendant’s trial on the new charge.
However, under the “same transaction” test under CPL 40.20 a trial for grand larceny is prohibited after a plea of guilty to criminal possession of stolen property in the third degree involving some of the stolen property since the two crimes have now been merged for jeopardy purposes.
This, to me, causes an unfortunate result. Under New York law, for example, if a person steals one million dollars in hundred dollar bills and is subsequently apprehended with one of the bills and prosecuted for the misdemeanor of criminal possession of stolen property in the third degree, he could not be prosecuted again for the $999,900 balance of the theft. The Federal rule permitting prosecution of the greater charge (which could not have been pursued originally for lack of evidence) seems more just and appropriate.
The burglary count is sustained.
The grand larceny and possession of stolen property counts related to the burglary are dismissed.[8]

. According to the Assistant District Attorney’s brief, the 17th Precinct burglary unit officers made serious efforts to identify the caller so as to obtain information that would aid in their investigation. The officers called the narcotics division, on the hunch that perhaps the burglar was a drug addict and in possession of the doctor’s medically related property. They also spoke with officers from the Manhattan South Borough office, to determine whether there was a report of an arrest dealing with the doctor’s stolen property. No such report was found in that office.

. At this time, Officer Gill was unaware of the misdemeanor complaint which had been filed by Officer Dilberti of the 9th Precinct on October 9, 1980, and of the defendant’s plea on November 20, 1980.

. This court will address the double jeopardy issue solely with regard to the first three counts of the indictment. The fourth count (charging the defendant with criminal possession of stolen property belonging to Dr. Samuel Katz) has no relation to the defendant’s double jeopardy contention concerning the burglary of Dr. Lewenberg’s office.

. It is noteworthy that the Blockburger analysis was recently utilized by the Appellate Division, Second Department, in People v Artis (supra). The defendant in Artis participated in a robbery in Kings County in which credit cards, car keys, currency, and a car were stolen. The defendant was arrested in New York County and pleaded guilty to criminal possession of stolen property in the third degree with respect to the car. The Appellate Division held that this plea did not bar a subsequent Kings County prosecution for robbery of the credit cards, currency and keys arising out of the same transaction because robbery “requires proof of a fact not required for possession of stolen property (namely, forceable stealing * * *), and possession of stolen property requires proof of a fact not required for robbery (namely, intent to benefit the possessor or a person other than the owner)” (74 AD2d 644, supra).

. The above analysis applies to the remaining two charges in the misdemeanor complaint (criminal possession of a controlled substance in the seventh degree, and criminal possession of a hypodermic needle), since those charges merely specify property which is the subject of the larceny charge.

. The Supreme Court in Brown held that the greater offense is therefore by definition, the same for purposes of double jeopardy as any lesser offense included in it. Moreover, whether conviction of the greater precedes conviction of the lesser or vice versa is irrelevant; the Fifth Amendment forbids successive prosecution for a greater and lesser included offense. (Brown v Ohio, supra, p 169.)

. Indeed, it is not necessary to show that larceny was the object of an entry to commit a crime. Burglary can be committed if the entry was for the purpose of any crime, such as assault or rape or injury to property. Nor does intent to commit a specific crime have to be alleged or proved in order to validly indict for burglary. (People v Mackey, 49 NY2d 274.)

. Of course, this ruling would not prevent the People from introducing evidence of the larceny or possession to prove the burglary.