OPINION OF THE COURT
Richard L. Price, J.
The defendant C. C. has been indicted on July 6,1983 on two counts of forgery of a vehicle identification number, hereinafter referred to as a VIN number, the illegal possession of a vehicle identification plate and two counts of stolen property in the first degree (indictment No. 000-83) while the defendants, M., C. and S. in a separate but related indictment were indicted on three counts of forgery of a VIN number, four counts of illegal possession of a vehicle identification number plate, six counts of criminal possession of stolen property in the first degree and two counts of criminal possession of stolen property in the third degree (indictment No. 00-83).
On November 22, 1983 an order was signed (Goldfluss, J.), referring to the trial court an application to dismiss *889 both of these indictments on the grounds that as to C. C., prosecution is barred pursuant to CPL 40.40. As to the other defendants, the prosecution is bound by a promise related to a plea bargaining agreement citing Santobello v New York (404 US 257) and People v Selikoff (35 NY2d 227) and in addition, on January 26, 1984 applications for what are commonly referred to as pretrial Mapp and Huntley hearings (Mapp v Ohio, 367 US 643; People v Huntley, 15 NY2d 72; CPL 710.60, subd 4) were similarly referred.
In the interest of judicial economy both of these applications were joined.
Before proceeding further by way of background, it should be noted that these defendants are employed by or operate as the XYZ Sanitation Corp., and that the items allegedly stolen would presumably be used in the maintenance and operation of the trucks of that corporation and not for resale.
Taking each of these items seriatim, the court will first deal with the indictment presently pending against C. C., indictment 000 of 1983.
On June 8,1983 the defendant, C. C., was arrested at his place of employment, the aforesaid XYZ Sanitation Corp., at 00 Main Boulevard and charged with the possession of stolen property and related crimes, defacement of VIN numbers and the possession of vehicles and parts which were similarly defaced or altered. To be more specific, the Criminal Court complaint stated that the stolen property consisted of two chassis rails reportedly stolen on August 18, 1981 and January 5, 1982, respectively, and that the changes or alterations involved a vehicle identification number plate and a third chassis rail.
However, pursuant to a search warrant executed on this same day, among other items seized were the three Mack trucks, the deprivation of which had brought and would continue to have serious economic repercussions for the corporation so that defense counsel in an effort to retrieve these trucks entered into an agreement (which the defendant persists in characterizing as a “deal”) whereby the case could be advanced to June 13, at which time the defendant would plead guilty to an attempt to criminally *890 possess stolen property, a class B misdemeanor, and that based upon such plea, the sentence would be a $500 fine.
On June 14, the very next day, defense counsel was advised the property release would not be honored, and subsequently, on July 6, 1983, this indictment was filed.
In explanation of this, the District Attorney’s affidavit states: “Meanwhile, for approximately a full week after the arrest * * * three officers from the Auto Crime Division engaged in a full time investigation of the property which was seized on June 8, 1983. This investigation revealed multiple violations of the law regarding possession of stolen truck parts and altered or removed VIN Numbers”.
Conceding that this information was not conveyed to the District Attorney until after the felony complaint had been disposed of.
And, in addition, on June 21,1983 in making an ex parte application to restore the case against the defendant to the calendar, a representation was made that “there were significant amounts of additional stolen property [to wit]: two additional chassis rails garbage truck with a stolen engine, truck with stolen transmission [and] a truck with two stolen rear ends”. (Emphasis supplied.)
A fair reading of the record reveals that while these particular items did not appear in the complaint, nonetheless, on June 8, they were, in fact, in the possession of the police department at the Whitestone Pound, seized pursuant to a search warrant.
In other words, the fair inference from the facts developed herein is not that the police “discovered significant amounts of additional stolen property” but rather that whatever efforts were expended subsequent to June 8, were expended to confirm and identify the true ownership of said property which had already been determined to have been stolen.
Be that as it may, however, the fact remains that whether or not the police had completed their investigation prior to the plea herein, in the absence of fraud practiced on either the District Attorney or the court, CPL 40.40 (subd 2) insofar as is applicable provides that “in any * * * *891 accusatory instrument filed in the * * * court, despite possession by the people of evidence legally sufficient to support a conviction of the defendant for such uncharged offense, and * * * the action * * * is disposed of by a plea of guilty, any subsequent prosecution for the uncharged offense is thereby barred”; the intent of this section being to outlaw by legislation repeated prosecutions for offenses arising out of the same criminal transaction. (People v Kephart, 77 Misc 2d 921.)
The distinction between this case and People v Fletcher (113 Misc 2d 5) cited by the People is patently obvious. In Fletcher (supra) no police investigation, however diligently conducted, could have concluded that a burglary had, in fact, occurred where the complainant, himself, was unaware of the commission of such a crime.
Here, on the contrary, prior to the plea, the police were in full possession of all the evidence necessary to conclude their investigation and whether they acted with sufficient expediency or the District Attorney acted precipitously or whether more than likely, there was a lack of communication between these two parties, the defendant cannot be deprived of the bargain he entered into in good faith by entering his guilty plea and fulfilling the conditions imposed at the time of sentence.
Had the defendant received and served a prison sentence rather than a fine, the injustice of the People’s position would be that much more apparent. Nonetheless, the principle remains the same.
Therefore, both within the letter and spirit of CPL 40.40, and indeed, more importantly, the letter and spirit of Santobello (supra) the District Attorney should be held to his agreement, or if you will “deal” with respect to C. C. to the extent that the plea and sentence previously imposed on June 13, 1983 shall be reinstated and the present indictment dismissed, and in addition, that the District Attorney shall issue a release for the three trucks heretofore seized consistent with the rights of the true owners of the vehicular parts allegedly stolen.
Though “circumstances will vary * * * a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be *892 said to be a part of the inducement or consideration, such promise must be fulfilled.” (Santobello v New York, supra, at p 262.)
However, with respect to the A.C.D.’s granted to the remaining defendants on that same day, putting aside for the moment the fact that such a device was “not a disposition, judgment or decree in favor of a defendant * * * [but] rather [a] nullification of an arrest and criminal proceedings by operation of law” and does not on grounds of double jeopardy prevent a later prosecution (People v Kephart, supra, p 924), the simple fact is that both the pleading minutes and the testimony of the Assistant District Attorney involved with this disposition are unequivocal, and refute any claim that the plea on behalf of C. C. was given in exchange for any consideration other than the release of the trucks (People v Frederick, 45 NY2d 520), and the sentence imposed.
Nor is it true as defense counsel contends that the restoration of the case to the calendar required a change in circumstances subsequent to the imposition of the A.C.D., since “in the furtherance of justice” the court may well restore a case to the calendar where the motion should not have been granted in the first place. (People v Paar, 89 Misc 2d 11.)
Moreover, the filing of the indictment rendered this issue moot since the A.C.D. by its nature is specifically confined to less serious offenses and is unavailable to dismiss charges contained in an indictment. (Matter of Hennessy v Gorman, 87 AD2d 29.)
Commencing with the testimony of Detective Grinenko at approximately 10:30 a.m. on the morning of June 8, 1983 we find him driving with a lieutenant to a coffee shop in the vicinity of the XYZ Sanitation Company. As the lieutenant emerges with the coffee, and he, Grinenko “started to pull away * * * I saw XYZ carting — my attention was drawn to a large garbage truck * * * proceeding quite fast * * * making a right-hand turn onto Main ***i*** identified myself * * * asked him for a license and registration * * * [and] explained to him that what he was doing was dangerous. He told me he didn’t have a *893 license. I opened the door * * * saw the VIN plate on that particular truck was missing.”
While the initial stop may well have been valid (Vehicle and Traffic Law, § 401, subd 4; § 509, subd 1 [formerly § 501, subd 4]; People v Aguirre, 111 Misc 2d 586, 590, citing People v Sobotker, 43 NY2d 559; People v Erwin, 42 NY2d 1064; and People v Harrison, 83 AD2d 965) it was quite apparent that the VIN number was not in plain view, though at this point the court is not prepared to view the intrusion as of constitutional dimensions since it has been held that “[t]he inspection of a vehicle identification number by opening a door or hood is nothing more than a check of the identification of the vehicle and therefore is not a search.” (People v Kanter, NYLJ, Oct. 15, 1976, p 7, col 1; emphasis supplied, citing People v Hart, 75 Misc 2d 908) nor is there any evidence as yet that the stop was a mere pretext to enable the police to take a more aggressive action. (People v Flanagan, 56 AD2d 658.)
Responding to the officer with respect to the VIN number, the driver, who was subsequently identified as the defendant M. directed Grinenko to his brother, S., who explained that the doors had been changed and invited him — (“I’ll show you”) into the premises where they found two additional doors, also lacking VIN numbers.
Provoked by this “We [Grinenko and the lieutenant] started looking around and directly across the garage * * * and I noticed that there are VIN Numbers stamped into the frame rails of the Mack trucks * * * and I noticed that the VIN Number on one of the rails was torched out.”
While the words, “I’ll show you” might possibly be construed to imply unsolicited invitation to enter the premises (People v Saglimbeni, 95 AD2d 141, 145, citing People v Meredith, 49 NY2d 1038), the officer’s conduct at this point in the opinion of this court is perilously close to a search.
“Generally, a search implies some exploratory investigation, a looking for or seeking out. It involves a prying into hidden places, and requires more than the use of the ordinary senses of sight, hearing, or smell.” (5 Zett, NY Grim Prac, par 36.3 [1], citing McDonald v United States, *894 335 US 451; On Lee v United States, 343 US 747; Goldman v United States, 316 US 129; Olmstead v United States, 277 US 438.)
At this point the statements sought to be suppressed are now made: “I proceeded to ask S. where he got the frames. He said he bought them from somebody by the name of * * * something like E., the Puerto Rican, who got himself killed a year or so ago.”
Whatever the outcome of any of the other issues in the case, “General on-the-scene questioning * * * is not affected by Miranda since in such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present * * * The test is not what the defendant thought, but rather what a reasonable man, innocent of any crime, would have thought, had he been in defendant’s position”. (People v Quail, NYLJ, Nov. 10, 1976, p 43, col 5, cols 5-6, citing People v Yukl, 25 NY2d 585.)
Now, assuming without necessarily conceding that the officer had validly discovered the missing VIN numbers on the truck door, and in addition, had reason to believe the frames were stolen, it cannot be gainsaid that he then had probable cause to arrest S. and C. since they, at least, acted in such a way as to lead the ordinary prudent person to believe that they were responsible for the operation of the business.
Since at this point, this court has determined, notwithstanding the officer’s statement to the contrary, that the defendants C. and S. were in custody, in the absence of the fourfold warnings prescribed by Miranda v Arizona (384 US 436) all of the statements made at this point are now suppressed.
Moreover, the subsequent search of the vehicle is similarly suppressed since it is not within the ambit of the search area. (Chimel v California, 395 US 752; see, also, People v Spinelli, 35 NY2d 77.)
At this point, Police Officer Rosas-Flores proceeded to the Bronx Criminal Court where he secured a search warrant.
*895 The court has examined the search warrant in addition to the underlying affidavit and finds that the facts stated therein substantially conform to the testimony as given on this hearing in that the argument that the stop “was a ruse and a front with a foundation in falsehood designed to gain unconstitutional entry into the premises” to be, at best, speculative and that the police seized everything in sight without bothering to verify or identify whether vehicles or parts were stolen or defaced, purely conclusory.
Nor is this court particularly impressed with the argument that the statement “there is reasonable cause to believe that there are other items or stolen property on the premises” is purely conclusory and insufficient to justify the issuing of the search warrant. (Defense counsel’s affirmation, citing People v Rogers, 15 NY2d 422.)
The officers were, in fact, on the premises and had observed stolen and/or altered vehicle parts and considering the size of the operation, it is not unreasonable to assume that there might well be additional similar articles not readily apparent on the premises as well.
Stripped to its main essentials, defense counsel’s relevant remaining arguments are: (1) that the initial entry onto the premises was nonconsensual and constituted a trespass; and (2) that the search and seizure of all the items occurred prior to securing the warrant.
Once more, taking each of these items seriatim with respect to consent.
“[Wjhile the burden of proof is on. a defendant who alleges an unlawful search and seizure * * * the People have the burden to show that the consent was freely given, and was not simply an acquiescence to authority * * * Moreover, the courts are bound to indulge in every reasonable presumption against such a waiver of one’s rights not to permit such an entry as was testified to by the police.” (People v White, NYLJ, March 1, 1978, p 16, col 3, citing People v Malinsky, 15 NY2d 86; Bumper v North Carolina, 391 US 543; People v Whitehurst, 25 NY2d 389; Johnson v Zerbst, 304 US 458; Green v United States, 355 US 184.)
*896 Construing so-called “unsolicited invitations” in several cases — “come on in” — he (the defendant) stated that, “I [the officer] was perfectly welcome to look anywhere in his room that I wanted to.”
The cases in the Court of Appeals and the Supreme Court clearly hold that, “ ‘[w]ords or acts that would show consent in some circumstances do not show it in others. “Non-resistance to the orders or suggestions of the police is not infrequent * * *; true consent, free of fear or pressure, is not so readily to be found” * * * no sane man who denies his guilt would actually be willing that policemen search his room [or place of business] for contraband which is certain to be discovered.’ ” (United States v Evans, 194 F Supp 90, 92, citing and quoting from Higgins v United States, 93 DC App 340, 209 F2d 819; Johnson v United States, 333 US 10; and Lee v United States, 98 DC App 97, 232 F2d 354; see, also, Catalanotte v United States, 208 F2d 264.)
Moreover, as previously suggested, the so-called invitation in this case — “I’ll show you” — can in no reasonable way be interpreted, either express or implied, to justify an entry into the premises for the purpose of taking inventory, as was done in this case.
This court can come to no other conclusion than that the People have failed to show the legality of the police conduct in the first instance, and as a consequence, for all of the reasons hereinbefore stated, this application is granted in all respects.