In the Matter of MARTIN S. AUER et al., Petitioners, v LYMAN SMITH, as a Justice of the Supreme Court of the State of New York, et al., Respondents.

Fourth Department, October 30, 1980

174

### APPEARANCES OF COUNSEL

*Edward F. Gerber* for Martin S. Auer, petitioner.

*Anthony Rivizzigno (Edward F. Gerber* of counsel), for John Mulroy, petitioner.

*Robert Abrams, Attorney-General (William Goldman* of counsel), for Lyman Smith, respondent.

*Peter D. Andreoli pro se* and *Edward Feinberg* for Peter D. Andreoli, respondent.

### OPINION OF THE COURT

CARDAMONE, J. P.

In this CPLR article 78 proceeding petitioners Mulroy and Auer, who have previously been charged and convicted by Special Prosecutor Andreoli with conspiring illegally to raise funds for the Onondaga County Republican Committee, seek to prohibit further prosecution. The Special Prosecutor asserts that petitioners' activities over a period of years have violated the general conspiracy statutes and several other substantive statutes of New York. He has secured three indictments— 1978, 1979 and 1980—against petitioners. The 1978 indictment has been tried. The other two are pending. Petitioners claim that since they have already been once tried for conspiracy, they may not again be tried upon the 11 counts of the 1979 and 1980 indictments. We hold that since eight general conspiracy counts of the pending indictments constitute double jeopardy they must be dismissed and that two of the three remaining substantive counts must also be dismissed, and trial is, therefore, precluded on these 10 counts. There remains one viable count in the 1979 indictment which charges petitioners with an illegal combination in restraint of trade and competition in violation of sections 340 and 341 of the General Business Law.

The indictments under attack in this special proceeding stem from an investigation into illegal political fund-raising activities, which allegedly took place in the offices of several

Onondaga County governmental departments over many years, but focused principally in the 1970's. Pursuant to the authority contained in Executive Order No. 42, Honorable Louis J. LEFKOWITZ, then Attorney-General, appointed respondent Peter D. Andreoli Special Deputy Attorney-General in charge of the investigation. By issuing Executive Order No. 43, Governor Hugh L. Carey appointed Honorable LYMAN H. SMITH, Justice of the Supreme Court, to hold the Extraordinary Special and Trial Term, presiding over the matters raised by the investigation. As a result of this investigation, certain indictments were returned naming petitioners as defendants.

### STATUS OF INDICTMENTS

A. 1978 INDICTMENT:

A 1978 indictment, the so-called "ticket sales" indictment charged petitioners and others with conspiracy, fourth degree (formerly Penal Law, § 105.00, now recodified as Penal Law, § 105.10), and with conspiracy to promote or prevent election (formerly Election Law, § 446, now recodified as Election Law, § 17-152). Under the first count, petitioners were charged with conspiring to commit the crimes of official misconduct (Penal Law, § 195.00), prohibition against certain political activities, improper influence (Civil Service Law, § 107, subd 3), political assessments (formerly Election Law, § 447, subds 1, 3, 4, 5), and political assessments (formerly Election Law, § 484, now recodified as Election Law, § 17-156). The second count of the indictment charged defendants with promoting the election of certain candidates by using the afore-mentioned unlawful means. The factual allegations of each count accuse petitioners and the others of a county-wide scheme to compel employees of Onondaga County to pay political assessments and contributions to the Onondaga County Republic Committee (Committee). The indictment alleges that from January, 1970 to the spring of 1977 certain Onondaga County officials, including petitioner Mulroy, Onondaga County Executive, and certain Committee officials, including then chairman, petitioner Auer, agreed to use their official status to compel such payments generally through the sale of tickets to fund-raising functions. Each count of the indictment alleges numerous overt acts committed in furtherance of the conspiracy. Trial under this 1978 indictment commenced on November 7, 1979 and terminated on February 19, 1980, with a verdict of guilty

against both petitioners on count one, conspiracy in the fourth degree, and a verdict of not guilty on the remaining count, conspiracy to promote or prevent election.

The indictments involved in the instant case, Nos. S1/1979 and S4/1980, were returned on February 15, 1979 and August 8, 1980, respectively.[1]

B. 1979 INDICTMENT:

Indictment No. S1/1979, the so-called "insurance" indictment, charged petitioners and one Roger C. Moreland with conspiracy, second degree (formerly Penal Law, § 105.10, now recodified as Penal Law, § 105.15), conspiracy, third degree (formerly Penal Law, § 105.05, now recodified as Penal Law, § 105.13), conspiracy, fourth degree (formerly Penal Law, § 105.00, now recodified as Penal Law, § 105.10), conspiracy to promote or prevent election (Election Law, § 17-152, formerly Election Law, § 446), and combination in restraint of trade and competition (General Business Law, §§ 340, 341). The factual allegations of the various counts of the 1979 indictment depict a conspiracy, designed to obtain funds for the Committee from various insurance agents and brokers (Insurance Vendors) which sold insurance to the county. The indictment alleges that the defendants informed certain Insurance Vendors that in order to obtain and retain business with the insureds they were required to make payments from their commissions (Commission Shares) to the Committee, and to other insurance agencies (Share Receivers); that the Share Receivers, although not entitled to any Commission Shares, received such shares from the Insurance Vendors in amounts determined by the conspirators based on the amount of each Share Receiver's contribution to the Committee. It is further alleged that petitioner Auer as Committee chairman from July, 1970 to January, 1974, directed Committee personnel to aid in the execution of this fund-raising plan; that Auer informed the Insurance Vendors of the amounts which they were required to pay to the Share Receivers; that defendant Roger C. Moreland administered this plan, known as the Onondaga County Insurance Program; that petitioner Mulroy,

---

1. Indictment No. S3/1980, referred to in the petition, has been superseded by Indictment No. S4/1980, which was returned after the petition in the instant proceeding was prepared. The original indictment named John Mulroy and Joseph Berndt as defendants, while the superseding indictment added Martin Auer and Gary Axenfeld as defendants. We assume that petitioners' arguments directed to No. S3/1980 are similarly directed to No. S4/1980.

as County Executive, permitted the codefendants and others to act on his behalf in wrongfully obtaining moneys from the Insurance Vendors; and that Mulroy agreed to accept the benefit of payments made by the Insurance Vendors and Share Receivers with the understanding that he would exercise the powers of his office to benefit those making such payments. Petitioners' motion to dismiss this 1979 indictment made on May 30, 1979 was denied on July 31, 1980 by Extraordinary Special Term Justice SMITH.

C. 1980 INDICTMENT:

Indictment No. S4/1980, the so-called "heavy equipment vendor" indictment which contains six counts and 147 pages charges petitioners, along with two others, with conspiracy, fourth degree (Penal Law, § 105.10), conspiracy, fifth degree (Penal Law, § 105.05), conspiracy, sixth degree (Penal Law, § 105.00), conspiracy to promote or prevent election (Election Law, § 17-152), conspiracy to prevent competitive bidding (General Municipal Law, § 103, subd 7), and combination in restraint of trade and competition (General Business Law, §§ 340, 341). The factual allegations of this indictment describe a scheme to obtain illegal payment for the benefit of the Committee from companies (Vendors) which sold or leased heavy equipment to various county agencies.

Having been arraigned on Indictment No. S3/1980 on May 8, 1980, petitioner moved to dismiss it on June 18, 1980. A few days after Special Term's decision denying the motion on the 1979 indictment, petitioners served copies of their moving papers in the present proceeding. Then, on August 8, 1980, petitioners were arraigned on Indictment No. S4/1980 which superseded Indictment No. S3/1980.

## INSTANT PROCEEDING

The petition in the instant proceeding states two causes of action. In the first cause of action, petitioners allege that they were convicted for conspiracy under the 1978 indictment; that the charges contained in the 1979 and 1980 indictments involve a single conspiratorial plan; that each of the three fund-raising devices was a component part of a single fund-raising plan designed to raise funds from persons and groups having business relations with the county; that prosecution under the 1979 and 1980 indictments would constitute multi-

ple trials for the same offense in violation of the double jeopardy provisions of both State and Federal Constitutions and also in violation of CPL 40.20, New York's double jeopardy statute; that respondents will, unless prohibited by this court, conduct further proceedings under the 1979 and 1980 indictments in violation of these constitutional guarantees and in excess of their jurisdiction; and that petitioners have no adequate legal remedy.

In the second cause of action petitioners allege that they were subjected to a five and one-half month trial on the 1978 indictment; that such trial has imposed physical, psychological and financial hardships upon petitioners; that if convicted upon trial of the pending indictments, petitioners will have no effective right of appeal since they will be unable to afford the purchase of a copy of the trial minutes; that they cannot endure additional trials; that the prosecutor's actions constitute harassment and prosecutorial oppression in violation of the due process clause of both State and Federal Constitutions; and that by attempting to prosecute petitioners under the 1979 and 1980 indictments, respondent Andreoli is acting without, and in excess of, jurisdiction.

In support of the petition, petitioners have each submitted an affidavit. In petitioner Mulroy's affidavit, he states that he was aware of the Committee's fund-raising efforts; that these fund-raising efforts were conducted solely by the finance chairman of the Committee and involved one over-all scheme which included the three classes of contributors; and that certain exhibits, such as a cash receipts journal and interim reports, demonstrate that the classes of persons referred to in the three indictments were joined in a single Committee fundraising effort. Petitioner Auer makes similar allegations in his affidavit. He also states that all three fund-raising activities were discussed at various Committee meetings; that these meetings were attended by certain Committee members, known as "Team Captains", who co-ordinated the fund-raising efforts among the various classes of contributors; that there was one general agreement among officers and workers of the Committee to raise funds; that the government employees responsible for obtaining the employee contributions were parties to this agreement; that other employees responsible for obtaining the Insurance and Vendor contributions were also parties to this agreement; and that these funds were commingled in the Committee's general funds.

### CONTENTIONS

Petitioners assert that an article 78 proceeding in the nature of prohibition is the proper procedural device to invoke their constitutional right not to be placed twice in jeopardy for the same offense (NY Const, art I, § 6; US Const, 5th Amdt). Respondent Andreoli contends that petitioners waived their double jeopardy claim by failing to raise it prior to trial upon the 1978 indictment; and that prohibition is inappropriate because petitioners have an adequate remedy at law. Petitioners further assert that these three indictments merely charge them with various aspects of what in fact is but a single conspiracy, one for which they have already been tried under the 1978 indictment. Respondent Andreoli responds that the prior trial is not a bar to trials upon the two new indictments since each involves a separate and distinct conspiracy.

### WRIT OF PROHIBITION GRANTED

██ ██ It is necessary to decide first whether the extraordinary writ of prohibition is a remedy available to petitioners. It is "available, both to restrain an unwarranted assumption of jurisdiction and to prevent a court from exceeding its authorized powers in a proceeding over which it has jurisdiction" (*La Rocca v Lane,* 37 NY2d 575, 578-579; see CPLR 7803, subd 2). The writ's ancient lineage often has been detailed (see, e.g., *Matter of Steingut v Gold,* 42 NY2d 311, 315-316; *Matter of Dondi v Jones,* 40 NY2d 8; *Matter of B. T. Prods. v Barr,* 54 AD2d 315, 317, affd 44 NY2d 226, 231). It will lie only where there is a clear legal right to it as a means to prevent the exercise of judicial power in violation of a person's rights, particularly constitutional rights (*Matter of Nicholson v State Comm. on Judicial Conduct,* 50 NY2d 597, 606). While the remedy issues as a matter of discretion and not of right, the petition before us asserting that prosecution upon pending criminal indictments is barred by double jeopardy classically fits the traditional mold of this historic writ (*Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County,* 37 NY2d 560; *Matter of Di Lorenzo v Murtagh,* 36 NY2d 306; *Matter of Cirillo v Justices of Supreme Ct. of State of N. Y.,* 34 NY2d 990).

██ To support his contention that petitioners have waived their double jeopardy claim, respondent Andreoli relies on

*Jeffers v United States* (432 US 137). In *Jeffers* the prosecution affirmatively sought trial on two indictments together which the defendant successfully resisted on the ground that much of the evidence admissible under one of the indictments would prejudice him on the other. Here the prosecutor has not sought to jointly try the various indictments. Unlike *Jeffers (supra,* p 154), petitioners are not "solely responsible for the successive prosecutions" and that case is not authority, therefore, for finding a waiver in this matter.

Respondent Andreoli's final contention that the existence of an adequate legal remedy requires dismissal of the instant proceeding is similarly without merit. Concededly, petitioners could have pursued their legal remedy by moving to dismiss the indictment on the ground of double jeopardy. However, the mere existence of a legal remedy does not require the denial of the writ of prohibition *(Matter of La Rocca v Lane, supra,* pp 579-580). Moreover, the Court of Appeals has recently sanctioned a prohibition proceeding, notwithstanding the defendant's failure to move to dismiss the indictment *(Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County, supra).*

### DOUBLE JEOPARDY TESTS WITH RESPECT TO CONSPIRACY

■■ The constitutional guarantee against double jeopardy reflects the deeply rooted fundamental principle that no person shall be tried more than once for the same offense *(Benton v Maryland,* 395 US 784, 795, citing 4 Blackstone's Comm, p 335). Three separate protections are embodied in that guarantee: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense" *(North Carolina v Pearce,* 395 US 711, 717). Petitioners have the burden of proving that the prosecutions under the 1979 and 1980 indictments are for the same offenses in law and in fact as those for which they have already been tried under the 1978 indictment *(United States v Papa,* 533 F2d 815, 820, cert den 429 US 961). The test used to determine whether two offenses are the same is based upon whether either requires proof of a fact which the other does not *(Brown v Ohio,* 432 US 161, 166; *Blockburger v United States,* 284 US 299, 304). This test, known as the "same evidence test", requires the court to examine the evidence and determine whether the evidence required to

support a conviction for one of the offenses would suffice to support a conviction for the other *(United States v DeFillipo, 590 F2d 1228, cert den 442 US 920; United States v Papa, supra; United States v Kramer, 289 F2d 909, 913).* The validity of this test, however, has been subject to question—if not discarded completely—in the area of certain criminal conspiracies, such as narcotics *(United States v DeFillipo, supra, pp 1234-1235; United States v Tercero, 580 F2d 312; United States v Papa, supra, p 820).* The "same evidence" standard is questioned in the context of criminal conspiracies because it would permit several indictments to be laid, each of which charged various overt acts and required proof of different facts, even though all were based on but a single conspiratorial agreement *(United States v Papa, supra, p 820; United States v Mallah, 503 F2d 971, cert den 420 US 995).* To avoid this unfair result, the inquiry is now more properly directed at the totality of all the circumstances to determine whether "the two alleged conspiracies are in reality part of a single conspiracy" *(United States v Tercero, 580 F2d 312, 315, supra).*

### CPL 40.20—AS IT RELATES TO CONSPIRACY

To this point the analysis has been limited to the protection afforded by the constitutional guarantee against double jeopardy. New York has chosen to expand this protection by its enactment of CPL 40.20. Subdivision 1 contains the basic double jeopardy concept: "A person may not be twice prosecuted for the same offense". Subdivision 2 provides that "[a] person may not be separately prosecuted for two offenses based upon the same act or criminal transaction" unless one of six enumerated paragraphs applies. "Criminal transaction" is defined as "conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture" (CPL 40.10, subd 2). "Criminal transaction" is primarily a factual concept which describes conduct; "offense" is a legal concept referring to a violation of the Penal Law which occurs upon the commission of a "criminal transaction" *(Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County,* 37 NY2d 560, 566, *supra;* Denzer, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL

40.10, pp 103-104; see *Matter of Klein v Murtagh,* 44 AD2d 465, affd 34 NY2d 988). The legislative purpose of CPL 40.20 (subd 2) is to prevent successive prosecutions and cumulative punishment for several offenses which arise from the same or nearly the same conduct where the offenses may be differentiated only "esoterically in law" (Denzer, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 40.20, p 106).

### STATE OF THE RECORD

Before applying these legal principles to this case, we first must turn our attention to the state of the record before us. At present it consists of the various indictments, small portions of Grand Jury and trial testimony, and a few affidavits. Ordinarily, the question of whether a single conspiracy exists is a question of fact. Usually there is a more complete record upon which to make the necessary factual determination. For instance, the double jeopardy issue often arises on an appeal from a defendant's second conspiracy conviction, in which case the record of both trials is examined to determine whether a single conspiracy existed as a matter of law *(United States v Mallah,* 503 F2d 971, *supra),* or whether the question should have been submitted to the jury *(Short v United States,* 91 F2d 614; *People v Silverman,* 281 NY 457). Where the double jeopardy issue is raised prior to the second trial, either on a motion to dismiss the indictment or, as here, by way of prohibition, the court must resolve the issue, if it is able to, on the basis of the record before it. For example, in *United States v Tercero* (580 F2d 312, *supra)* the Federal District Court relied on the indictments, the Grand Jury testimony and the transcript of the first trial to conclude that a single conspiracy existed, and it granted the defendant's pretrial motion to dismiss the indictment on the ground of double jeopardy. On the other hand, an examination of the indictments alone has been held sufficient to establish that New York's double jeopardy statute barred a second trial *(People v Abbamonte,* 43 NY2d 74; *Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County,* 37 NY2d 560, *supra).*

### CONCLUSION THAT A SINGLE CONSPIRACY EXISTS

██ Various factors are considered in viewing the totality of the circumstances to determine whether two alleged criminal conspiracies are, in fact, only one. The most significant

factor is whether there existed a single purpose or over-all objective *(Blumenthal v United States,* 332 US 539, 558-559; *United States v Becker,* 569 F2d 951, 960, cert den 439 US 865; *United States v Perez,* 489 F2d 51, 62-64, cert den 417 US 945; *United States v Kenny,* 462 F2d 1205, cert den *sub nom. Sternkopf v United States,* 409 US 914; *United States v Palermo,* 410 F2d 468, 470-471). Other factors include overlap of personnel, time periods covered by alleged conspiracies and the location of the operation *(United States v Tercero, supra; United States v Mallah, supra; Short v United States, supra).* Here the allegations of the three indictments reveal a single conspiratorial scheme designed to raise funds for the Committee. The alleged targets of this fund-raising plan—county employees, Insurance Vendors and heavy equipment vendors —were different in each indictment. However, in each case county officials, under the direction and control of petitioner Mulroy, as County Executive, worked with Committee officials, under the direction and control of petitioner Auer as Committee chairman, to exact payments for the Committee from persons employed by, or doing business with, the county. In each indictment the alleged objective of the conspiracy was the same, i.e., to promote the election of candidates supported by the Committee, including Mulroy and Auer. Incidentally, each of the three target groups theoretically benefited in the same way, by receiving favorable treatment from the conspirators in exchange for their compliance with this illicit arrangement.

   Each indictment depicts Mulroy and Auer by virtue of their official positions as the leaders of this county-wide operation. Some intermediaries who carried out various aspects of this three-pronged scheme may not have known of the activities of the others. The record reveals that it is likely that some did. In any event, a finding that a single conspiracy existed is proper here. Rather than three vertical free standing conspiracies with the leaders at the top as depicted by respondent Andreoli, the arrangement in this case may be likened to a three-spoked wheel with petitioners being the hub and the various county and Committee officials forming the three spokes *(United States v Mallah, supra;* see *United States v Kenny, supra,* where an analogous factual situation was held to constitute one conspiracy). The common goal of benefiting the Committee united these three fund-raising methods into a single conspiracy, petitioners being ultimately responsible for its execution *(United States v Becker, supra;* see

*Kotteakos v United States,* 328 US 750, 755). No special fact finding is necessary for us to reach this determination since the allegations of the indictments themselves establish this common purpose, with petitioners in charge during their respective terms of public office.

Other factors reinforce our conclusion that a single conspiracy existed. Considerable overlap exists in the time periods alleged in each indictment.[2] All acts in furtherance of the conspiracy are alleged to have occurred within Onondaga County. Persuasive of a common purpose is the admitted fact that funds derived from all three operations were commingled in the Committee's general funds. Finally, in their uncontroverted affidavits petitioners state that all three fund-raising activities were discussed at various Committee meetings, and that they were co-ordinated and administered by the finance chairman with the assistance of Team Captains.

### CONSPIRACY COUNTS DISMISSED

All that remains to be decided is the effect that this conclusion has on the various counts of the 1979 and 1980 indictments. The essence of the crime of conspiracy is the illicit agreement. Where there is but one conspiracy or one agreement, the double jeopardy clause protects against multiple prosecutions. The prosecutor may not arbitrarily decide whether there is one agreement or several. Nor may the prosecutor remove a conspiracy from the protection against double jeopardy "by charging different overt acts as having been committed in furtherance of it, or by charging additional objects or the violation of additional statutes as within its purview, if in fact the second indictment involves substantially the same conspiracy as the first" *(Short v United States,* 91 F2d 614, 624, *supra,* as cited in *United States v Mallah,* 503 F2d 971, 985, *supra).* Thus, petitioners having been convicted of conspiracy, fourth degree, under the 1978 indictment, may not now be tried under the 1979 or 1980 indictments for the three degrees of conspiracy charged in each of them.

Therefore, the first three counts of the 1979 and 1980 indictments which charge petitioners with violations of New

2. Indictment No. S8/1978 alleged that petitioners, between 1970 and 1977, joined a pre-existing conspiracy. The time periods alleged in the 1979 and 1980 indictments are January, 1961 to January, 1973 and September, 1967 to March, 1979, respectively.

York's general conspiracy statutes must be dismissed. Since petitioners were acquitted of conspiracy to promote or prevent election (Election Law, § 17-152, formerly Election Law, § 446) under count 2 of the 1978 indictment, they may not now be prosecuted for violations of this same statute under count 4 of the 1979 or 1980 indictment.

### NO DOUBLE JEOPARDY WITH RESPECT TO REMAINING COUNTS

Remaining for consideration are three counts: count 5 of the 1979 indictment and count 6 of the 1980 indictment which charge petitioners with combination in restraint of trade and competition in violation of sections 340 and 341 of the General Business Law, and count 5 of the 1980 indictment which charges petitioners with conspiracy to prevent competitive bidding, in violation of subdivision 7 of section 103 of the General Municipal Law. Section 340 of the General Business Law prohibits contracts or agreements made in restraint of competition in the conduct of business, trade or commerce. Under section 341 persons making such agreements are guilty of a class E felony. Subdivision 7 of section 103 of the General Municipal Law makes it a misdemeanor to conspire "to prevent competitive bidding on a contract for public work or purchase advertised for bidding".

■ Petitioners urge that their conviction under New York's general conspiracy statute bars subsequent prosecution under the foregoing statutes. However, a single conspiracy may violate not only the general conspiracy statutes, but also the prohibitions contained in the General Business Law and the General Municipal Law, even though the charges arose out of the same single conspiracy charge. The double jeopardy clause does not bar separate prosecutions so long as each requires proof of facts not essential to the other. Separate State interests are protected by both statutes (see *United States v Kenny,* 462 F2d 1205, 1215, *supra).* Under New York's general conspiracy statute, petitioners have been convicted for agreeing to abuse their official positions in order to raise funds in violation of the law. For this agreement, they may not be tried again. Since the offenses defined in sections 340 and 341 of the General Business Law and subdivision 7 of section 103 of the General Municipal Law are different from this agreement— regardless of whether these offenses are considered violations of separate conspiracy statutes or object crimes of the one master conspiracy—the Supreme Court instructs us that in

neither case is reprosecution barred by the guarantee against double jeopardy *(United States v Pinkerton,* 328 US 640).

### REMAINING COUNTS UNDER CPL 40.20 AND CPL 40.40

■ Having concluded that the prosecution under count 5 of the 1979 indictment and counts 5 and 6 of the 1980 indictments is not constitutionally prohibited, we further consider whether prosecution is barred by CPL 40.20. The first test under this section is whether the conduct of petitioners, which resulted in violations of more than one statutory offense, "constituted 'integral parts of a single criminal venture' and, thus, a single 'criminal transaction' within the meaning of CPL 40.20 (subd 2)" *(Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County,* 37 NY2d 560, 567, *supra).* In this case we are satisfied that the conduct of petitioners was "so closely related in criminal purpose or objective" as to constitute a single criminal transaction (CPL 40.10, subd 2; see *Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County, supra,* p 566). Where the conduct constitutes a single criminal transaction, separate prosecution for the offenses is barred unless one of the exceptions to CPL 40.20 applies. CPL 40.20 (subd 2, par [b]), in effect, permits separate prosecution for two offenses based on the same criminal transaction if "[e]ach of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil". In *Matter of Abraham (supra),* the Court of Appeals held that a Federal drug conspiracy statute and a State drug possession statute were both designed to prevent the same kinds of harm—illicit trafficking in drugs. Therefore, separate prosecution for possession, a substantive crime of the conspiracy offense, was not permitted. However, in *People v Lo Cicero* (14 NY2d 374) a kidnapping prosecution was not precluded by an acquittal in Federal court of hijacking a truck in interstate commerce. Although the two crimes were committed in the same criminal transaction they were separate crimes containing different elements. The general conspiracy statute is designed to prevent the harm which flowed from petitioner's agreement to raise funds in violation of various laws. However, the specific prohibitions contained in sections 340 and 341 of the General Business Law are designed to protect the competitive economic process. Similarly subdivision 7 of section 103 of the General Munici-

pal Law is designed to enforce compliance with the public policy of New York to insure competitive bidding on public contracts. Because three distinct evils are proscribed by the foregoing statutes, CPL 40.20 does not bar separate prosecution under count 5 of the 1979 indictment or under counts 5 and 6 of the 1980 indictment.

While petitioners' second cause of action is based on alleged violations of the due process clause of the State and Federal Constitutions, we perceive no such violations per se. New York has provided by statute (CPL 40.40) for the kind of prosecutorial conduct alleged. Thus, we consider whether an application of that statute may be a potential bar to trial upon these two new indictments. CPL 40.40 bars separate prosecution of two or more offenses which are joinable in a single accusatory instrument (CPL 40.40, subd 1). Subdivision 2 of that section provides that where the prosecutor has two or more joinable offenses and the second one is not charged "despite possession by the people of evidence legally sufficient to support a conviction of the defendant for such uncharged offense," any subsequent prosecution for the uncharged offense is barred.

The papers before us reveal that petitioners were arraigned on the 1979 indictment prior to their trial under the 1978 indictment. Even though the offenses were joinable because they were based on the same criminal transaction (CPL 200.20, subd 2, par [a]; CPL 40.10, subd 2), "the prohibition against separate prosecution of jointly prosecutable offenses applies *only* if the defendant has requested consolidation thereof for trial purposes and the request is denied (CPL 40.40, subd 3)" *(People v Dean,* 56 AD2d 242, 246, affd 45 NY2d 651). Here the petitioner failed to move for consolidation and, therefore, CPL 40.40 does not require dismissal of the remaining count of the 1979 indictment.

A different result is reached with regard to the two remaining counts of the 1980 indictment. It was not returned until after trial under the 1978 indictment. Indictment No. S4/1980, the one we are considering, superseded Indictment No. S3/1980 which was also returned after petitioners' conviction under the 1978 indictment. Under CPL 40.40 (subd 2) we must decide whether the prosecution, at the time of the earlier trial, had "possession * * * of evidence legally sufficient to support a conviction of the defendant" on the uncharged offense. If so, prosecution for the uncharged offense is barred

(CPL 40.40, subd 2, par [b]). Respondent Andreoli alleges that "proof of the petitioners' liability * * * [under the 1980 indictment] was not before the Grand Jury until after the trial of #S8/1978". However, the Special Prosecutor does not state that he lacked "sufficient evidence". Indeed, it is undisputed that all documents and records of the Committee had been turned over to the respondent Special Prosecutor prior to any of the three indictments being handed down. The record before us further reveals that Grand Jury Exhibit No. 258-E dated October 18, 1977 contains the names of individuals involved in ticket sales who were subsequently indicted for the insurance and equipment vendor schemes. Testimony before the Grand Jury on June 8, 1978 revealed the involvement of equipment vendors in the Committee's fund-raising plan. An exhibit introduced by the prosecutor in the 1978 trial (cash receipts journal) contained the name of Syracuse Supply Company, an equipment vendor. In fact, the Special Prosecutor in his affidavit before us in this matter stated that "party folders" from the Committee were offered for evidence by the People. These "party folders", he continues, were documents relating to the three areas at issue—employee solicitation, insurance and heavy equipment vendors. Also in the possession of the People were Committee accounting journals which, he concedes, "listed receipts of funds from persons associated with each of these three areas". From the foregoing the inference seems to us inescapable that the Special Prosecutor had evidence in his possession which one could reasonably conclude was "legally sufficient to support" a conviction of these petitioners for the offenses later charged in the 1980 indictment.

CPL 40.40 "deals with repeated prosecutions for different and factually distinct offenses arising out of the same criminal transaction under circumstances wherein no violation of the double jeopardy principle can validly be maintained but the equities nevertheless seem to preclude separate prosecutions" (Denzer, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 40.40, p 142). In essence, this legislation reflects the recognition that justice and judicial economy are best served by consolidating in a single proceeding all issues arising from a single transaction (People v Ruzas, 54 AD2d 1083). Where the evidence against a person is in the prosecutor's hands, he may not—as a player in a game of chance—deal out indictments one at a time. Thus, to our minds barring

prosecution on these two remaining counts of the 1980 indictment "enforces the ancient prohibition against vexatious multiple prosecutions" *(Ashe v Swenson,* 397 US 436, 454 [BRENNAN, J., concurring]) and accords with current notions of fairness.

Accordingly, the petition should be granted to the extent indicated in this opinion.

SCHNEPP, CALLAHAN, WITMER and MOULE, JJ., concur.

Writ unanimously granted in part, without costs, in accordance with opinion by CARDAMONE, J. P.