In the Matter of ARTHUR D. MASON, Petitioner, v HAROLD J. ROTHWAX, as Justice of the Supreme Court, et al., Respondents.

First Department, December 12, 1989

### APPEARANCES OF COUNSEL

*Edward M. Chikofsky* for petitioner.

*David Steiner* and *Clinton W. Calhoun, III,* of counsel *(Mark Dwyer,* attorney), for Robert M. Morgenthau, respondent.

### OPINION OF THE COURT

SMITH, J.

This is a proceeding brought in the Supreme Court, Appellate Division, First Department, in which petitioner Arthur Mason seeks a writ of prohibition barring the respondents from prosecuting him pursuant to indictment number 300/88, brought in New York County, on the ground of double jeopardy in violation, *inter alia,* of the NY Constitution (art I, § 6), the Fifth and Fourteenth Amendments of the US Constitution and CPL 40.20. The respondents move to dismiss the petition.

The claim of double jeopardy is based upon a Federal prosecution which resulted in the acquittal of petitioner on all charges. The Federal indictment was filed in September of 1987 and named petitioner Mason and seven other persons as defendants. Of the 58 counts of the indictment, petitioner was named in six (counts 1, 22, 23, 39-41). Of the 7 other defendants, 4 (Daniel Brier, Ronald Williams, Lawrence Klusky and John Geanoulis) pleaded guilty to various charges. Three others (John Galanis, Samuel Rosengarten and Anthony Marchese) were tried with petitioner. Rosengarten was acquitted on all charges. Galanis and Marchese were convicted on various charges.

The Federal indictment grew out of investigations by a number of Federal agencies, including the IRS, the FBI, the SEC, the Federal Home Loan Bank Board (FHLBB), the Federal Reserve Board and the Office of the Comptroller of the Currency. The Federal indictment charged the defendants, *inter alia,* with membership in a continuing criminal enterprise dubbed the "Galanis Organization". It was alleged that in the years 1981, 1982, 1983 and 1984 the Galanis Organization created and sold investments in a series of oil and gas exploration limited partnership tax shelters. Allegedly, the offering materials contained a number of misrepresentations and omissions. The Galanis Organization created a corporate front known as the Andover Finance Company to provide lending for investors. The Galanis Organization also used illegal means to gain control of several financial institutions, including the People's National Bank of Rockland County, New York, the Heritage Bank and Trust Company in Salt Lake City, Utah, the CFS Corporation, which was a Connecticut savings and loan holding company, the Chilton Private Bank of Texas and the ISI Corporation of California.

The Federal indictment charged petitioner Mason, an attorney, with playing a major role in efforts to conceal the tax liability of one of the organization's corporate fronts, with serving as a nominee in the organization's efforts to gain control of the CFS Corporation, and with repeatedly making misrepresentations to the FHLBB. The relevant counts of the Federal indictment were as follows:

Count 1 of the Federal indictment charged conspiracy to defraud the IRS in violation of 26 USC § 7206 (2). Specifically, count 1 charged that between January 1, 1981 and the filing of that indictment, Mason, his codefendants and others willfully and knowingly agreed with each other (1) to defraud the United States Government by impeding the IRS in its ability to ascertain and collect income taxes and (2) to commit a violation of 26 USC § 7206 (2), to wit, knowingly assisting in the preparation of fraudulent tax returns.

Section 7206 (2) prohibits willfully aiding in, procuring, counseling or advising the preparation or presentation of any fraudulent document, in connection with any matter arising under the Internal Revenue Code, whether or not the falsity is within the knowledge of the persons required to make the filing.

Counts 22 and 23 of the Federal indictment alleged a con-

spiracy to conduct the affairs of a RICO and the conduct of the affairs of a RICO, and engaging in a pattern of racketeering activity in violation of 18 USC § 1961 *et seq.* The essence of these charges was the participation in a continuing criminal enterprise known as the Galanis Organization which created and sold investments in a series of oil and gas exploration limited partnership tax shelters. The offering materials allegedly contained a number of misrepresentations and omissions. The Galanis Organization also used illegal means to gain control of a number of financial institutions.

Counts 39-41 of the Federal indictment alleged a conspiracy to defraud the FHLBB in violation of 18 USC §§ 371, 1001 and 1343.

The State indictment, filed on January 27, 1988, was the result of an investigation commenced by the Frauds Bureau of the Office of the New York County District Attorney in the fall of 1985. An earlier investigation of Galanis by that office had resulted in a 1983 indictment (No. 3457/83) which charged Galanis and several others with the theft of several million dollars from the Chase Manhattan Bank. Indictment No. 3457/83 was still pending at the time of the filing of the current indictment in 1988 and the earlier indictment was disposed of when Galanis pleaded guilty in the current case.

The State indictment (300/88) charges 10 defendants including Mason and Galanis. Only four of the State defendants (Galanis, Mason, Rosengarten, Klusky) were also named in the Federal indictment. Seven of the 10 State defendants have pleaded guilty to felony offenses, leaving Mason and two others to be tried.

The 105 counts of the State indictment charge the defendants with creating, promoting and marketing a series of 32 fraudulent real estate limited partnership tax shelter investments between February 1984 and June 1986 through corporate fronts known as the Consolidated Mortgage Company (CMC) and Nashua Trust Company (NATCO). With respect to Mason, who is charged in 39 counts of the State indictment, it is alleged that he arranged with Galanis for two law firms in which he was a senior partner to represent various corporate entities used by the defendants and to represent many of the real estate partnerships. Mason's law partner, codefendant Richard Perrin, allegedly prepared fraudulent offerings and promotional materials for those partnerships represented by the firm. Also, Mason assisted in the purchase of the CFS Corporation with $3,600,000 in diverted partnership funds.

Specifically, count 1 charges conspiracy in the fifth degree in that between February 28, 1984 and June 5, 1986, with intent to commit the felonies of grand larceny in the second degree, scheme to defraud in the first degree, offering a false instrument for filing in the first degree and violations of section 352-c (5) and (6) of the General Business Law, the defendants agreed with each other to sell fraudulent tax shelter investments consisting of real estate limited partnership units and to perform various acts to further the sales. As part of the conspiracy, the defendants allegedly created Consolidated Mortgage Company in February 1984 and North American Trust Company in November 1984, whose name was subsequently changed to the Nashua Trust Company (NATCO). Mason's activities included service, through his law firms, as counsel to NATCO.

Count 2 charges the defendants with a scheme to defraud in the first degree in violation of section 190.65 of the Penal Law by conduct, during the period from on or about February 28, 1984 to June 5, 1986, which included efforts to defraud at least 10 persons; the employment of fraud, deceit, misrepresentations and false and fraudulent pretenses to sell to investors units or fractions of units in 32 real estate limited partnerships; the formation of Consolidated and the formation of NATCO. Mason's activities allegedly included service, through his law firms, as counsel to some partnerships for which fraudulent private placement memoranda were prepared. Mason also was allegedly responsible for the diversion, through fraud, of more than $3,600,000 in partnership funds.

Count 3 charges the defendants with a violation of section 352-c (2) of the General Business Law in that from February 28, 1984 to June 5, 1986, with intent to induce the issuance and sale of securities within the State of New York, they engaged in fraud, made unreasonable promises and made false representations in order to induce the sale of securities in 32 real estate limited partnerships.

Counts 4, 5, 7 and 8 charge violations of section 352-c (5); section 352-c (5) again; section 352-c (6) and section 352-c (6) again, respectively, of the General Business Law in connection with the sale of limited partnership units.

Count 14 and counts 16 through 20 charge various defendants, including Mason, with offering a false instrument for filing in the first degree in violation of section 175.35 of the Penal Law. These counts relate to the filing of private place-

ment memoranda for certain of the limited partnerships with the New York State Department of Law, Real Estate Financing Bureau, Syndication Section.

Counts 60 through 65 and 76 through 95 charge various defendants, including Mason, with grand larceny in the second degree in connection with the sale of partnership units and investment programs to individual investors.

The petitioner's first argument is that the State prosecution is barred by CPL 40.20 since both the Federal and State prosecutions are based upon the same "criminal transaction" as defined in CPL 40.10 (2). The criminal transaction, according to the defendant, is the furtherance of the tax shelter schemes of the Galanis Organization. It does not matter what substantive crimes are undertaken to further that scheme. Specifically, defendant contends that the conspiracy charged in count 1 of the State indictment is the same offense as the conspiracy charged and proven in the Federal prosecution. Moreover, the embracive nature of the Federal RICO prosecution encompasses the facts alleged in the State offenses. In addition, the petitioner argues, the securities fraud and larceny counts of the State indictment were or could have been included in the Federal prosecution and are barred by double jeopardy.

In response to the petitioner's first claim, the District Attorney makes several arguments. The People contend that the Federal prosecution, excluding the Federal RICO charges (counts 22 and 23 of the Federal indictment), was not based upon the same criminal transaction as any of the State charges. Specifically, the State conspiracy charge (count 1) is not a part of the same transaction of any Federal non-RICO count involving Mason, and the substantive State counts are not part of the same transaction of any relevant Federal count. Moreover, the State Conspiracy charge is not precluded by prosecution of the Federal conspiracy charge since the charges are based on different "offenses" as defined by CPL 40.20 (1) and 40.10 (1).

Even if the Federal and State prosecutions are based upon the same "criminal transaction" as defined in CPL 40.10 (2), the District Attorney contends that various statutory exceptions permit State prosecution of all of the charges except those involving the Martin Act. Specifically, CPL 40.20 (2) (f) and (h), along with CPL 40.50 (9), authorize a State prosecution following a Federal RICO prosecution. CPL 40.20 (2) (a)

permits a State prosecution for grand larceny (counts 1, 60-65, 76-95). CPL 40.20 (2) (b) permits State prosecution of all of the charges except those involving the Martin Act.

■ In resolving the contentions of the parties on this first argument of whether Federal and State prosecutions arise from the same criminal transaction, it is necessary to examine some aspects of CPL article 40 and the meaning of the term "criminal transaction" as used in CPL 40.20 (2). This examination leads to the conclusion that the prosecutions are not based on the same criminal transaction.

■ According to CPL 40.10 (1) an offense "is committed whenever any conduct is performed which violates a statutory provision defining an offense". CPL 40.20 (1) states that "[a] person may not be twice prosecuted for the same offense." Thus, even though the Federal and State Constitutions do not prohibit a State prosecution for the same offense following a Federal prosecution (see, Bartkus v Illinois, 359 US 121 [1959]), CPL 40.20 (1) does.

CPL 40.20 (2) narrows the prohibition set forth in CPL 40.20 (1) by prohibiting separate prosecutions "for two offenses based upon the same act or criminal transaction" except in the instances outlined in the exceptions listed. CPL 40.20 (2) reads, in relevant part, as follows:

"2. A person may not be separately prosecuted for two offenses based upon the same act or criminal transaction unless:

"(a) The offenses as defined have substantially different elements and the acts establishing one offense are in the main clearly distinguishable from those establishing the other; or

"(b) Each of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil; or * * *

"(f) One of the offenses consists of a violation of a statutory provision of another jurisdiction, which offense has been prosecuted in such other jurisdiction and has there been terminated by a court order expressly founded upon insufficiency of evidence to establish some element of such offense which is not an element of the other offense, defined by the laws of this state; or * * *

"(h) One of such offenses is enterprise corruption in violation of section 460.20 of the penal law, racketeering in violation of federal law or any comparable offense pursuant to the

law of another state and a separate or subsequent prosecution is not barred by section 40.50 of this article."

CPL 40.10 (2) defines criminal transaction as follows: " 'Criminal transaction' means conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture."

The initial inquiry here will include an examination of the meaning of the term "criminal transaction" and the application of such term to the facts herein. The next step will be to determine whether even if the charges contained in the Federal and State indictments arise from the same "criminal transaction", any of the exceptions contained in CPL 40.20 (2) operate to permit the State prosecution.

Several cases have discussed the meaning of the term "criminal transaction". In *Matter of Abraham v Justices of N. Y. Supreme Ct.* (37 NY2d 560, 566 [1975]), the Court of Appeals emphasized the definition of "criminal transaction" as conduct establishing at least one offense and "comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture." The same decision went on to quote from a Practice Commentary to CPL 40.10 that the term " 'is primarily a factual concept denoting a group of acts or an episode of conduct which gives rise to one or more "offenses" ' " (37 NY2d, at 566). The term "offense" is " 'primarily a legal concept, amounting to a violation of a penal provision which occurs upon the commission of a criminal act or transaction.' " (37 NY2d, at 566; *see also, People v Abbamonte,* 43 NY2d 74, 82 [1977]; *Matter of Auer v Smith,* 77 AD2d 172, 182-183 [4th Dept 1980], *appeal dismissed* 52 NY2d 1070 [1981].)

In *Matter of Abraham v Justices of N. Y. Supreme Ct. (supra)* the Court of Appeals ruled, in part, that CPL 40.20 (2) (a) prohibits a State prosecution for drug possession where one of the overt acts proven, or which could have been proven, in a Federal prosecution for conspiracy was the same offense of drug possession. The court held that the conduct was so

clearly related in criminal purpose as to be an integral part of a single criminal venture. In *People v Abbamonte (supra)*, the Court of Appeals ruled that where defendants were previously convicted in Federal court of conspiracy to violate Federal drug laws, a subsequent State prosecution for a substantive offense which could have been charged in the Federal case was barred as it arose out of the same "criminal transaction", citing CPL 40.20 (2). If the conduct constituting the charged crime and the Federal conspiracy are "so closely related in criminal purpose or objective as to constitute .elements or integral parts of a single criminal venture", they are part of the same criminal transaction. (CPL 40.10 [2] [b].) In *Matter of Auer v Smith (supra)*, the Fourth Department ruled that CPL 40.20 barred successive State prosecutions where the defendant was convicted of conspiracy in connection with illegal political fund raising and challenged two subsequent conspiracy indictments involving the same fund raising. Since the essence of the conspiracy was the single agreement to raise funds, the prosecutor could not arbitrarily determine that there was more than one agreement and divide the prosecution. In determining whether there is one conspiracy, the entire record must be reviewed. The factors to be considered in determining whether there are two alleged criminal conspiracies or one include (1) whether there is a single purpose or over-all objective; (2) whether there is overlap of personnel; (3) whether there is overlap in the time periods covered by the conspiracies; and (4) the locations of the operations. *(See, Matter of Auer v Smith, supra,* at 183-185.)

█ Applying the definition of "criminal transaction" as interpreted by case law to the facts of this case, the conclusion is inescapable that most of the conduct alleged in the Federal and State prosecutions is not based upon the same criminal transaction.

First, the acts alleged in the two indictments are not so closely related in point of time and circumstance of commission as to constitute a single criminal incident or so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture. The essence of the Federal prosecution was a conspiracy to defraud the IRS, to conduct the affairs of a RICO enterprise and to defraud the FHLBB primarily through the creation and sale of investments in a series of oil and gas limited partnership tax shelters. The essence of the State prosecution is the

alleged promotion and marketing of a series of 32 fraudulent real estate limited partnership tax shelter investments.

The defendant's argument, that the link between the Federal and State indictments which prohibits the State prosecution is the Galanis Organization, cannot be upheld in the face of the differing objectives of the alleged conspiracies as well as other factors. These include (1) the different time periods— 1981, 1982 and 1983 for the sale of oil and gas investments alleged in the Federal indictment and February 1984 to June 1986 for the promotion and marketing of the fraudulent real estate investments; (2) the identity of the defendants in the two prosecutions—the Federal indictment naming 8 persons and the State indictment naming 10, only 4 of whom had been named in the Federal indictment; and (3) the allegedly different locations involved in the Federal and State prosecutions. To this must be added the independent nature of the investigations, with apparently virtually no sharing of information until a State review of the Federal Grand Jury minutes sometime after October 19, 1987.

■ Even if the Federal and State prosecutions are based upon the same criminal transaction, that is based upon the objectives of the Galanis Organization, the State prosecution is still permitted by the exceptions contained in CPL 40.20 (2).

First, CPL 40.20 (2) (f) permits a State prosecution following a Federal prosecution which has "been terminated by a court order expressly founded upon insufficiency of evidence to establish some element of such offense which is not an element of the other offense, defined by the laws of this state". In the Federal prosecution, the court acquitted the defendant Mason of counts 1, 22 and 23 which alleged a conspiracy to defraud the IRS and a conspiracy to conduct the affairs of a RICO as well as the conduct of the affairs of a RICO. In dismissing the count the court noted, "Mason is entitled to an acquittal on Count 1, and * * * as a matter of necessity because of that in light of the interpretation of the 2nd Circuit in Ruggiero *(United States v Ruggiero,* 726 F2d 913, (1984) * * * he would be entitled to be acquitted on the two RICO counts, including even the RICO conspiracy * * * 22 and 23."

Following acquittal by the court on these charges, the jury acquitted defendant Mason of conspiracy to defraud the FHLBB. (Counts 39-41.)

Second, CPL 40.20 (2) (a) and (b) authorize the State prosecution here. CPL 40.20 (2) (a) states that a person may be

prosecuted where "[t]he offenses as defined have substantially different elements and the acts establishing one offense are in the main clearly distinguishable from those establishing the other". CPL 40.20 (2) (b) authorizes a State prosecution where "[e]ach of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil".

The elements needed to establish violations of the Federal and State offenses are substantially different. It suffices to review the charges as described above and the statutes involved to note the difference. As stated previously, the essence of the Federal charges was the participation in a continuing criminal enterprise known as the Galanis Organization which created and sold investments in a series of oil and gas exploration limited partnership tax shelters. The offering materials contained a number of misrepresentations and omissions. The Galanis Organization also used illegal means to gain control of a number of financial institutions. The State charges relate to activities involving the creation and marketing of fraudulent real estate limited partnership tax shelter investments.

Finally, it is noted that CPL 40.20 (2) (h) enacted in 1986, and thus inapplicable here, authorizes a State prosecution where the prior prosecution was for "racketeering in violation of federal law * * * and a separate or subsequent prosecution is not barred by section 40.50".

CPL 40.50 (9) provides that a person who has previously been prosecuted for racketeering may not be subsequently prosecuted for enterprise corruption based upon a pattern of criminal activity which includes a criminal act that was also specifically included in the pattern of racketeering activity charged. But CPL 40.50 does not prohibit a subsequent State prosecution for any other offenses which are a part of the pattern of racketeering activity alleged in the prior prosecution. Thus, CPL 40.20 (2) (h) could arguably operate to authorize the State prosecution herein. However, CPL 40.20 (2) (h) and 40.50 (9), effective as of November 1, 1986, are applicable to a pattern of criminal activity beginning prior to its effective date only if a defendant's participation in the alleged pattern of criminal activity includes at least one felonious act committed on or after November 1, 1986. (L 1986, ch 516, § 15.) Here, all of the criminal acts alleged in both the State and Federal indictments occurred prior to November 1986.

Defendant's second argument against the State prosecution is that he was acquitted of Federal charges involving conspiracy to commit fraud in the purchase of the County Federal Savings and Loan Bank (CFS) in Connecticut and the State prosecutor is collaterally estopped from relitigating these same facts. In opposition to this argument the prosecution contends that collateral estoppel is inapplicable here where an identity of parties is required and the State was not a party to the Federal prosecution. *(People v Goodman,* 69 NY2d 32, 38 [1986]; *Ashe v Swenson,* 397 US 436, 443 [1970].)

The doctrine of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy. It stands for the principle that when an issue of fact previously has been ultimately determined by a final judgment, that issue may not be litigated again by the same parties. *(Ashe v Swenson, supra,* 397 US, at 443; *People v Goodman, supra,* 69 NY2d, at 37.)

However, application of the doctrine of collateral estoppel requires identification of the particular issue on which a party seeks to foreclose evidence and a determination that the fact finder in the first trial, by its verdict, necessarily resolved that issue in such party's favor. *(People v Goodman, supra,* 69 NY2d, at 40.) In *People v Goodman,* the Court of Appeals refused to apply the doctrine to preclude the prosecution, on a retrial for larceny, from presenting evidence to the jury which related to charges of which the defendant had been acquitted. There, the mixed verdict in the earlier trial revealed that the jury could have rationally acquitted the defendant of robbery and murder while convicting him of larceny because of lack of corroboration of the testimony of an accomplice rather than for reasons of the defendant's innocence.

As previously noted, Mason was found not guilty by a jury of counts 39, 40 and 41 of the Federal indictment. Count 39 charged Mason and Galanis with conspiracy to defraud the Federal Home Loan Bank Board (18 USC § 371) "with respect to the control and operation of County Federal Savings and Loan Association and Columbia Federal Savings Bank". Specifically, it was charged that Mason and others purchased the outstanding stock of CFS Corporation, the parent company of County Federal Savings and Loan Association, and that between May 1982 and the filing of that indictment, made misleading written and oral statements to the FHLBB regarding the interest of Galanis in the purchase of and concealed the intent of the coconspirators to use the CFS bank for the purposes of the Galanis Organization. Count 40 charged Ma-

son and Galanis with issuing a false statement to the FHLBB (18 USC § 1001) by memorandum dated March 11, 1985. Count 41 charged Mason and Galanis with fraud in connection with the purchase and sale of the common stock of the CFS Corp., which they and others caused to be sold to Mason.

Thus, the principal factual allegations against Mason in counts 39 through 41 concern his involvement in the purchase and management of the CFS bank and with the filing of documents with the FHLBB knowing that the information contained therein was false. Similarly, the essence of counts 1, 2, 3 (conspiracy, scheme to defraud and securities fraud) of the State indictment is Mason's responsibility for his law firm being hired by the Galanis Organization, the fraudulent private placement memoranda prepared by his law partner, codefendant Perrin, and petitioner's allegedly fraudulent representations in connection with the CFS purchase.

At the Federal trial, Mason did not deny his participation. Rather, it was his contention that the representations were not fraudulent or that he did not know of their true nature and of the purpose of the Galanis Organization. Hence, the ultimate issue which was before the Federal jury and which will be before the finder of fact at the New York County trial is whether Mason participated knowingly.

However, application of the doctrine of collateral estoppel also requires that there be an identity of parties (*People v Goodman, supra,* 69 NY2d, at 38 [1986]). In *Matter of Klein v Murtagh* (44 AD2d 465, 469 [2d Dept 1974], *affd* 34 NY2d 988 [1974]), the Second Department concluded that where a Federal prosecution charged the defendant with violations of the Travel Act (18 USC § 1952), and a State indictment charged, *inter alia,* violation of Penal Law §§ 105.05, 200.00 and 200.25, there was insufficient identity of interest between the State and Federal governments in prosecuting intrastate and interstate offenses, respectively, to justify treating the Queens County District Attorney as a party to or privy to the initial litigation. (*See, United States v Sutton,* 245 F Supp 357, 359-360 [Md 1965].)

Similarly here, particularly in view of the apparent absence of information sharing between the two prosecutors and the different evils that the Federal and State crimes charged were intended to prevent, it cannot be said that a uniformity of interest or privity exists between the District Attorney and the United States Attorney in this case.

■ Nonetheless, the State prosecution of counts 1 through 3 is barred for several other reasons. Under the holding of *People v Abbamonte* (43 NY2d 74, 83, 84 [1977], *supra*), State prosecution of a substantive offense which could have been, but was not, charged as an overt act in a prior Federal conspiracy prosecution is barred as growing out of the same "criminal transaction". Thus, as counts 39 through 41 of the Federal indictment and counts 1 through 3 of the State indictment, alleging Mason's assistance in diverting funds to purchase the Connecticut Bank, are "so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture" (CPL 40.10 [2] [b]), State prosecution of counts 1 through 3 is precluded. *(People v Abbamonte, supra.)* Nor does the exception of CPL 40.20 (2) (h) permit this prosecution, as the criminal acts charged are alleged to have occurred prior to November 1, 1986, the effective date of CPL 40.20 (2) (h).

■ The defendant's third argument is that the prosecution of the State charges is barred by both the Federal and State Constitutions. It is clear that this argument must be rejected. The prosecution of the same conduct by two different sovereigns does not offend the double jeopardy provisions of either Constitution. *(Bartkus v Illinois,* 359 US 121 [1959], *supra.)* In *Bartkus,* the Supreme Court of the United States upheld the prosecution of a man for violation of an Illinois robbery statute after he had been acquitted in a Federal District Court of robbing a Federally insured bank.

Thus, we conclude CPL 40.20 (2) precludes prosecution of only counts 1, 2, 3 of the State indictment and that CPL 40.20 (2) (a), (b) and (f) operate to permit prosecution of the remaining counts.

Accordingly, the petition is granted only to the extent of barring prosecution of counts 1, 2 and 3 of the State indictment. The cross motion of the prosecution to dismiss the petition is granted except as to counts 1, 2 and 3 of the State indictment, without costs and without disbursements.

Ross, J. (concurring in part and dissenting in part). Petitioner, Mr. Arthur D. Mason (petitioner), applies pursuant to CPLR article 78, to this court, for an order prohibiting his trial on New York County indictment number 300 of 1988, filed January 27, 1988, upon the ground of double jeopardy, since he was previously acquitted, in the United States District Court, Southern District of New York, of crimes, which

are allegedly similar to those charged in the New York indictment.

After a nationwide investigation, which lasted several years, of the criminal activities of Mr. John Peter Galanis, who is a convicted felon, in September 1987, a Federal indictment was returned against eight defendants, who included petitioner and Mr. Galanis. This Federal indictment concerned, in substance, the creation, promotion, and marketing, by a criminal enterprise, of, *inter alia,* 73 fraudulent oil and gas limited partnership tax shelter investments, and the illicit use by that organization of financial institutions, such as a Connecticut bank, which was known as County Federal Savings & Loan Association (CFS). Although the Federal indictment contained 58 counts, petitioner, who is an attorney, was named in only six counts, and those counts, in substance, charged him as follows: count 1 with conspiracy to defraud the Internal Revenue Service (IRS) (18 USC § 371); count 22, with conspiracy to conduct the affairs of an enterprise, through a pattern of racketeering activity (RICO conspiracy) (18 USC § 1962 [d]); count 23, with conducting the affairs of an enterprise, through a pattern of racketeering (18 USC § 1962 [c]); count 39, with conspiracy to defraud the Federal Home Loan Bank Board, regarding the acquisition and management of CFS (18 USC § 371); count 40, with issuing a false statement to the Federal Home Loan Bank Board (18 USC § 1001); and count 41, with fraud in the sale of securities (15 USC § 78j [b]; § 78ff [a]).

At the same time that Federal authorities were investigating Mr. Galanis, the New York County District Attorney was also investigating him, and their investigation culminated, in January 1988, in an indictment against 10 defendants, including petitioner and Mr. Galanis. This New York indictment concerns, in substance, the petitioner's participation, together with others, during the period from February 1984 to the spring of 1986, in the creation, promotion, and marketing to the public of a series of 32 fraudulent real estate limited partnership tax shelters. While the New York indictment contains 105 counts, the petitioner is named in only 39 of them, and those counts charge petitioner, in substance, as follows: count 1, with the crime of conspiracy in the fifth degree (Penal Law § 105.05); count 2, with the crime of a scheme to defraud in the first degree (Penal Law § 190.65); counts 3, 4, 5, 7, 8, with violations of the General Business Law, which is popularly known as the Martin Act, § 352-c (2), (5), and (6); counts 14, 16, 17, 18, 19, and 20, with the crime of

offering a false instrument for filing in the first degree (Penal Law § 175.35); and counts 60 through 65 and 76 through 95, with the crime of grand larceny in the second degree (Penal Law § 155.40).

Following the New York State indictment, in April 1988, in the United States District Court, Southern District of New York, petitioner, together with three other defendants, was tried on the Federal charges. This trial resulted in the Judge dismissing counts 1, 22, and 23 against petitioner, based upon the insufficiency of the evidence, and the jury acquitting him of counts 39, 40, and 41.

In view of my analysis of the Federal indictment, and the Federal trial transcript, I only agree with the majority's conclusion that prosecution of the petitioner is barred in New York, under CPL 40.20, in respect to counts 1 and 3 of the State indictment.

Petitioner was acquitted by a jury, as mentioned *supra,* of count 39 of the Federal indictment, which charged conspiracy, and count 1 of the State indictment also charges conspiracy. Based on my examination of the record, I find both conspiracies arose "from the same criminal scheme, venture, or persisting enterprise" *(People v Abbamonte,* 43 NY2d 74, 83 [1977]), and, therefore, prosecution is barred on that count of the State indictment.

Furthermore, I find prosecution is barred on count 3 of the State indictment, since petitioner was acquitted by the jury of count 41 of the Federal indictment, which is intended to deal with the same allegations as count 3, which is security fraud *(see,* CPL 40.20).

However, I disagree with the majority concerning count 2 of the State indictment. I would permit petitioner to be prosecuted on that count, which charges a scheme to defraud in the first degree, because it is designed to prevent the defrauding of New York investors, and that objective is not within the scope of the Federal counts of which the jury acquitted petitioner. CPL 40.20 (2) (b) permits a second prosecution without violating the doctrine of double jeopardy, when "Each of the offenses [in count 2 of the State indictment and counts 39 through 41 of the Federal indictment] as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil".

The Federal conspiracy charged that the prohibited conduct

commenced in 1981, and although there may be a time overlap, the alleged State conspiracy commenced in 1984. The Federal RICO charges alleged an agreement to commit a "continuing criminal enterprise", through a "pattern of racketeering activity" (18 USC §§ 1961, 1962). The State charges specific felonies, and these specific acts were not necessarily the objects of the Federal RICO allegations. One test that has been applied is whether the second prosecution requires proof of "additional significant facts", and further, do the indictments charge mostly different defendants and different overt acts *(United States v Reiter,* 848 F2d 336 [2d Cir 1988]).

Accordingly, I would only bar State prosecution of counts 1 and 3.

MILONAS and ELLERIN, JJ., concur with SMITH, J.; KUPFERMAN, J. P., and Ross, J., concur in part and dissent in part in an opinion by Ross, J.

Application for a writ of prohibition granted, only to the extent of barring prosecution of counts 1, 2 and 3 of the State indictment and the cross motion granted except as to counts 1, 2 and 3 of the State indictment, without costs and without disbursements.